# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

_____
)
G.K, by their next friend, Katherine )
Cooper, et al. )
)
Plaintiffs, )
v. )                                    Case No. 1:21-cv-0004
)
Christopher Sununu, in his official capacity )
as the Governor of New Hampshire, et al. )
)
Defendants )
_____ )

## ANSWER TO PLAINTIFFS' CLASS ACTION COMPLAINT

Defendants Christopher Sununu, in his official capacity as Governor of the State of New

Hampshire, Lori Shibinette, in her official capacity as Commissioner of New Hampshire

Department of Health and Human Services, Joseph Ribsam, in his official capacity as Director of

the Division for Children, Youth and Families, and Henry Lipman, in his official capacity as

Director of New Hampshire Medicaid Services, respond to Plaintiffs' Class Action Complaint as

follows:

### ADMISSIONS & DENIALS

Defendants generally deny all of Plaintiffs' allegations as set forth in Plaintiffs' Class

Action Complaint, except for those that are specifically admitted below. See Fed. R. Civ. P.

8(b)(3). Thus, any allegation not expressly admitted herein is denied. Where Defendants lack

knowledge or information sufficient to form a belief about an allegation, Defendants so respond.

See Fed. R. Civ. P. 8(b)(5). Because the Court has dismissed Plaintiffs' Fourteenth Amendment

right to counsel claim, see E.C.F. No. 49 at pp. 11–19, Defendants are not required to respond to

the allegations Plaintiffs formerly asserted in support of that claim, <u>see</u> Fed. R. Civ. P. 8(b)(1)(B); Fed. R. Civ. P. 8(b)(6).

<u>Paragraph 1:</u> Generally denied.

<u>Paragraph 2:</u> Specifically admitted that Plaintiffs G.K., C.I., T.L., and R.K. filed this lawsuit on behalf of themselves. Otherwise, generally denied.

<u>Paragraph 3:</u> Specifically admitted that some children in DCYF's custody reside in group homes, child care institutions, or other child care agencies, as defined in RSA 170-E:25; that some children in DCYF's custody change residences more frequently than other children; and that some children in DCYF's custody may not have a home, a job, or be at standard educational grade level upon reaching the age of majority. Otherwise, generally denied.

<u>Paragraph 4:</u> Generally denied.

<u>Paragraph 5:</u> Specifically admitted that Plaintiffs have sued Defendants in Defendants' official capacities; that Christopher Sununu is the Governor of New Hampshire; that Lori Shibinette is the Commissioner of DHHS; that Joseph Ribsam is the Director of DCYF; and that Henry Lipman is the Director of Medicaid Services. No response is required with respect to the allegation regarding Christopher Keating because this allegation relates solely to the claim that the Court has dismissed. Otherwise, generally denied.

<u>Paragraph 6:</u> Specifically admitted that Plaintiffs seek relief pursuant to 42 U.S.C. § 1983; and that Plaintiffs' surviving legal theories in support of their requests for relief are based on: (1) the Adoption Assistance and Child Welfare Act of 1980 as codified at 42 U.S.C. §§ 622, 671 *et seq*; (2) Title II of the Americans with Disabilities Act as codified at 42 U.S.C. § 12131 *et seq*; and (3) Section 504 of the Rehabilitation Act of 1973, as codified at 29 U.S.C. § 794 *et seq*. Otherwise, generally denied.

Paragraph 7: Specifically admitted that Plaintiffs seek declaratory and injunctive relief. Otherwise, generally denied.

Paragraph 8: Specifically admitted that Plaintiffs seek declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. Otherwise, generally denied.

Paragraph 9: Specifically admitted that jurisdiction is proper under 28 U.S.C. § 1331. Otherwise, generally denied.

Paragraph 10: Specifically admitted that 28 U.S.C. § 2201 authorizes this Court to issue declaratory relief subject to the limitations set forth therein; that Federal Rule of Civil Procedure 57 governs the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201; that 28 U.S.C. § 2202 authorizes this Court to issue further necessary and proper relief subject to the limitations set forth therein; and that Federal Rule of Civil Procedure 65 sets forth procedural rules related to injunctions and restraining orders. Otherwise, generally denied.

Paragraph 11: Specifically admitted that the District of New Hampshire is the proper venue for this civil action. Otherwise, generally denied.

Paragraph 12: Specifically admitted that on January 5, 2021, G.K. was fourteen years old and was in DCYF's custody; and that Katherine Cooper is currently G.K.'s Court-appointed next friend. Lack knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding Katherine Cooper; and about the truth of the allegation that G.K. has a mental impairment that substantially limits a major life activity. Otherwise, generally denied

Paragraph 13: Specifically admitted that on January 5, 2021, C.I. was sixteen years old and was in DCYF's custody; that C.I. has a mental impairment; and that Christine C. Wellington is currently C.I.'s Court-appointed next friend. Lack knowledge or information sufficient to

form a belief about the truth of the remaining allegations regarding Christine C. Wellington; and about the truth of the allegation that C.I.'s mental impairment substantially limits a major life activity. Otherwise, generally denied.

Paragraph 14: Specifically admitted that on January 5, 2021, T.L. was fourteen years old and was in DCYF's custody; that T.L. has a mental impairment; and that Christine C. Wellington is currently T.L.'s Court-appointed next friend. Lack knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding Christine C. Wellington; and about the truth of the allegation that T.L.'s mental impairment substantially limits a major life activity. Otherwise, generally denied.

Paragraph 15: Specifically admitted that on January 5, 2021, R.K. was fourteen years old and was in DCYF's custody; that R.K. has a mental impairment; and that Katherine Cooper is currently R.K.'s Court-appointed next friend. Lack knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding Katherine Cooper; and about the truth of the allegation that R.K.'s mental impairment substantially limits a major life activity. Otherwise, generally denied.

Paragraph 16: Specifically admitted that Christopher Sununu is the duly elected Governor of the State New Hampshire; that Plaintiffs have sued Governor Sununu in his official capacity; that under Part II, Article 41 of the Constitution of the State of New Hampshire, the executive power of the state is vested in the governor; that the governor is responsible for the faithful execution of the laws; that the governor and executive council are responsible for appointing the commissioner of DHHS, members of the advisory board to DCYF, and the administrative head of the office of the child advocate; that Governor Sununu acted under color of state law at all times relevant to this action. Otherwise, generally denied.

Paragraph 17: Specifically admitted that DHHS provides a comprehensive and coordinated system of health and human services as needed to promote and protect the health, safety, and well-being of citizens of New Hampshire; that DHHS is under the executive direction of a commissioner of DHHS; that the commissioner of DHHS is responsible for seeking funds from the state legislature to implement New Hampshire's child protection and Medicaid programs; that the commissioner of DHHS is responsible for ensuring that DHHS complies with all applicable federal and state laws; that Lori Shibinette is the duly appointed Commissioner of DHHS; that Plaintiffs have sued Commissioner Shibinette in her official capacity; and that Commissioner Shibinette acted under color of state law at all times relevant to this action. Otherwise, generally denied.

Paragraph 18: Specifically admitted that DCYF is a division of DHHS; that DCYF assumes and administers some of the responsibilities and duties relative to child welfare services; that those services include services provided to children, including Plaintiffs, in DCYF's custody; that DCYF administers child welfare services under Title IV-E of the Social Security Act; that the director of DCYF is responsible for ensuring that DCYF complies with applicable federal and state laws; that Joseph Ribsam is the Director of DCYF; that Plaintiffs have sued Director Ribsam in his official capacity; and that Director Ribsam acted under color of state law at all times relevant to this action. Otherwise, generally denied.

Paragraph 19: Specifically admitted that the Division of Medicaid Services is a division of DHHS charged with responsibility for administering New Hampshire's Medicaid program; that Henry Lipman is the director of the Division of Medicaid Services; that Plaintiffs have sued Director Lipman in his official capacity; and that Director Lipman acted under color of state law at all times relevant to this action. Otherwise, generally denied.

Paragraph 20: No response is required because these allegations relate solely to a claim that the Court has dismissed.  To the extent a response to the allegations in this paragraph is required, the allegations are generally denied.

Paragraph 21: Specifically admitted that Federal Rules of Civil Procedure 23(a) and 23(b)(2) set forth procedural rules related to class actions.  Otherwise, generally denied.

Paragraph 22: Generally denied.

Paragraph 23: Generally denied.

Paragraph 24: Generally denied.

Paragraph 25: Generally denied.

Paragraph 26: Generally denied.

Paragraph 27: Generally denied.

Paragraph 28: Generally denied.

Paragraph 29: Lack knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiffs will fairly and adequately protect the interests of the Class that they seek to represent; and that Plaintiffs' counsel know of no conflicts between or among members of the Class that they seek to represent.  Otherwise, generally denied.

Paragraph 30: Specifically admitted that each Plaintiff currently appears by a next friend. Lack knowledge or information sufficient to form a belief about the truth of the allegations that each next friend is sufficiently familiar with the facts of the child's situation and dedicated to fairly and adequately representing the child's best interests in this litigation; and that Plaintiffs are unaware of any conflicts between or among Plaintiffs and/or persons in the Class they seek to represent.  Otherwise, generally denied.

Paragraph 31: Lack knowledge or information sufficient to form a belief about the truth of the allegations that Plaintiffs are represented by attorneys who are competent and experienced in class action litigation, child welfare litigation, disability rights law, and complex civil litigation.  Otherwise, generally denied.

Paragraph 32: Lack knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiffs' counsel have identified and thoroughly invested all claims in this action, have relevant expertise, and have committed sufficient resources to represent the Class through trial and any appeal.  Otherwise, generally denied.

Paragraph 33: Generally denied.

Paragraph 34: Generally denied.

Paragraph 35: Generally denied.

Paragraph 36: Generally denied.

Paragraph 37: Generally denied.

Paragraph 38: Specifically admitted that children in DCYF's custody may be placed in a relative's home, a foster family home, a group home, a child care institution, or in another child care agency.  Otherwise, generally denied.

Paragraph 39: Generally denied.

Paragraph 40: Specifically admitted that there are child care agencies that provide services to children pursuant to RSA 169-B, RSA 169-C, and RSA 169-D, as well as pursuant to other statutory provisions.  Otherwise, generally denied.

Paragraph 41: Specifically admitted that children in DCYF's custody may be placed in other states, including states that neighbor New Hampshire, Arkansas, Missouri, Tennessee, Iowa, Virginia, Florida, Oklahoma, and Arizona.  Otherwise, generally denied.

Paragraph 42: Generally denied.

Paragraph 43: Generally denied.

Paragraph 44: Generally denied.

Paragraph 45: Specifically admitted that toxic stress has been linked to physical effects on children's neural structures, compromised brain development and behavioral functioning, and related psychological adjustment problems. Otherwise, generally denied.

Paragraph 46: Generally denied.

Paragraph 47: Specifically admitted that children should be placed in residential or group care facilities when they have specialized needs; and that placement in a residential or group care facility should continue so long as is necessary for those needs to be addressed; and that once those needs are addressed, it is generally in the best interest of children to be placed in a family-based setting as appropriate to their individual needs. Otherwise, generally denied.

Paragraph 48: Generally denied.

Paragraph 49: Generally denied.

Paragraph 50: Generally denied.

Paragraph 51: Specifically admitted that neuroscientists have studied the impact of early childhood experiences on the formation of the developing brain; that Plaintiffs' Class Action Complaint accurately quotes the article cited in Footnote 9, in part. Otherwise, generally denied.

Paragraph 52: Specifically admitted that frequent placement moves can affect the mental health of a child. Otherwise, generally denied.

Paragraph 53: Generally denied.

Paragraph 54: Generally denied.

Paragraph 55: Generally denied.

Paragraph 56: Specifically admitted that the National Youth in Transition Database ("NYTD") collects information on youth in foster care and outcomes for youth transitioning out of foster care. Lack knowledge and information sufficient to form a belief about the truth of the allegations concerning Plaintiffs' interpretation of what unspecified data from the NYTD shows. Otherwise, generally denied.

Paragraph 57: Generally denied.

Paragraph 58: Specifically admitted that on January 5, 2021, G.K. was fourteen years old; and that G.K. has been in DCYF's custody since they were twelve years old. Otherwise, generally denied.

Paragraph 59: Specifically admitted that G.K. has been diagnosed with depression, anxiety disorder, and attention-deficit/hyperactivity disorder ("ADHD"). Lack knowledge or information sufficient to form a belief about the truth of the allegation that each aforementioned diagnosis substantially limits G.K.'s ability to function. Otherwise, generally denied.

Paragraph 60: Specifically admitted that G.K. resided in the approved home of their grandfather and his partner; that DCYF thereafter placed G.K. with a child care agency in New Hampshire; and that G.K.'s placement at that child care agency continued for almost two years. Otherwise, generally denied.

Paragraph 61: Specifically admitted that G.K. was receiving mental health services in the community and attending a public school. Lack knowledge and information sufficient to form a belief about the truth of the allegation regarding what G.K. does not subjectively understand; and about the truth of the allegation regarding what G.K. subjectively desires. Otherwise, generally denied.

Paragraph 62: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, specifically admitted that G.K. has a Court Appointed Special Advocate ("CASA"). Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding what G.K. subjectively believes. Otherwise, generally denied.

Paragraph 63: Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding what G.K. does not subjectively recall. Otherwise, generally denied.

Paragraph 64: Lack knowledge or information sufficient to form a belief about the truth of the allegations regarding what G.K. subjectively considers to be abnormal for a teenager. Otherwise, generally denied.

Paragraph 65: Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding G.K.'s subjective feelings regarding their self-esteem; and about the truth of the allegation regarding an anti-singing rule. Otherwise, generally denied.

Paragraph 66: Lack knowledge and information sufficient to form a belief about the truth of the allegation regarding a prohibition against doing laundry for lack of trust. Otherwise, generally denied.

Paragraph 67: Specifically admitted that children at the referred to placement are afforded certain privileges based on age level. Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding the level of privileges G.K. enjoyed on January 5, 2021. Otherwise, generally denied.

Paragraph 68: Specifically admitted that G.K. received mental health services in the community; and that G.K. attended a public high school. No response is required with respect to

the allegation that G.K. has never been appointed an attorney because this allegation relates solely to a claim that the Court has dismissed. Otherwise, generally denied.

Paragraph 69: Specifically admitted that on January 5, 2021, C.I. was sixteen years old. Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding C.I. being removed from their home for the first time at age four; and about the truth of the allegation regarding a subsequent reunification attempt when C.I. was six years old. Otherwise, generally denied.

Paragraph 70: Specifically admitted that C.I. has been diagnosed with ADHD, major depressive disorder, and post-traumatic stress disorder. Lack knowledge or information sufficient to form a belief about the truth of the allegation that each aforementioned diagnosis substantially limits R.K.'s ability to function. Otherwise, generally denied.

Paragraph 71: Generally denied.

Paragraph 72: Specifically admitted that DCYF placed C.I. and their sibling in an adoptive home out-of-state when C.I. was about twelve years old; that C.I. and their sibling were subsequently placed at Nashua Children's Home; and that Nashua Children's Home is in southern New Hampshire. Otherwise, generally denied.

Paragraph 73: Specifically admitted that C.I. stayed at Nashua Children's Home for over two years; that C.I. was subsequently placed at Chase Home; and that C.I.'s sibling was not placed at Chase Home with them. Otherwise, generally denied.

Paragraph 74: Specifically admitted that DCYF placed C.I. in a new foster home after C.I. resided at the Chase Home for several months; that C.I. engaged in increasingly concerning behaviors in school after being placed in the new foster home; and that C.I. was subsequently hospitalized. Otherwise, generally denied.

Paragraph 75: Specifically admitted that DCYF subsequently placed C.I. at Mount Prospect Academy's Enhanced Residential Treatment ("ERT") Program. Otherwise, generally denied.

Paragraph 76: Specifically admitted that C.I. attended Mount Prospect Academy; and that Mount Prospect Academy is a private special education school. Otherwise, generally denied.

Paragraph 77: Specifically admitted that C.I. remained at the ERT Program for approximately one year. Lack knowledge or information sufficient to form a belief about the truth of the allegation concerning C.I.'s subjective understanding about the length of time they would stay at the ERT Program. Otherwise, generally denied.

Paragraph 78: Lack knowledge or information sufficient to form a belief about the truth of the allegation concerning the ERT Program moving C.I. to the most restrictive housing unit; and about the truth of the allegation concerning the ERT Program requiring C.I. to attend the on-grounds school. Otherwise, generally denied.

Paragraph 79: Specifically admitted that there were instances where C.I. was physically retrained while at the ERT Program. Lack knowledge and information sufficient to form a belief about the truth of the allegation concerning C.I.'s subjective descriptions of their time at the ERT Program; and about the truth of the allegation concerning C.I.'s subjective feelings about the characteristics of staff at the ERT Program. Otherwise, generally denied.

Paragraph 80: Specifically admitted that C.I. was restrained by multiple staff; that the referred to events gave rise to delinquency offenses for assault and criminal threatening; and that as a result of the referred to events C.I. became involved in the juvenile justice system and was subsequently committed to the Sununu Youth Services Center ("SYSC"). Lack knowledge or

information sufficient to form a belief about the truth of the allegation concerning C.I.'s subjective feeling about their circumstances. Otherwise, generally denied.

Paragraph 81: Specifically admitted that C.I. was committed to SYSC; that DCYF subsequently placed C.I. in a residential program in another state; and that DCYF did not consider placing C.I. in a foster home at that time. Otherwise, generally denied.

Paragraph 82: Lack knowledge or information sufficient to form a belief about the truth of the allegation concerning C.I.'s subjective feeling of isolation; and about the truth of the allegations concerning C.I. not having friends or family in the community referred to. Otherwise, generally denied.

Paragraph 83: No response is required with respect to the allegations concerning legal representation and C.I.'s subjective beliefs about the same because these allegations relate solely to a claim that the Court has dismissed. Otherwise lack knowledge and information sufficient to form a belief about the truth of the allegation concerning what C.I. subjectively believes. Otherwise, generally denied.

Paragraph 84: Specifically admitted that C.I. attended counseling and Dialectical Behavioral Therapy. Lack knowledge and information sufficient to form a belief about the truth of the allegation concerning what C.I. subjectively recalls and is subjectively aware of. Otherwise, generally denied.

Paragraph 85: Specifically admitted that T.L. was fourteen years old when the complaint was filed on January 5, 2021; that T.L. was removed from their mother's care due to allegations of abuse or neglect; and that at all times since T.L.'s removal from their home, T.L. has remained in DCYF's custody. Otherwise, generally denied.

Paragraph 86: Specifically admitted that during the removal from their mother's care, T.L. was accompanied by the police.  Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding a police officer grabbing T.L.'s arm and pulling T.L. into the car.  Otherwise, generally denied.

Paragraph 87: Specifically admitted that upon removal from their mother's care, T.L. was separated from their mother and their siblings.  Lack knowledge and information sufficient to form a belief about the truth of the allegations regarding separation from a service dog. Otherwise, generally denied.

Paragraph 88: Specifically admitted that T.L. experienced a significant traumatic event when they were four years old; that T.L. has been diagnosed with anxiety, ADHD, and attention deficit disorder; and that T.L. has been prescribed medication.  Lack knowledge and information sufficient to form a belief about the truth of the allegations regarding substantial limits on T.L.'s ability to function.  Otherwise, generally denied.

Paragraph 89: Specifically admitted that T.L. was attending Crotched Mountain School as a day student at the time they were removed from their mother's care; that DCYF subsequently placed T.L. in the residential program at Crotched Mountain School; and that Crotched Mountain School is located in Greenfield, New Hampshire.  Otherwise, generally denied.

Paragraph 90: Specifically admitted that DCYF moved T.L. from Crotched Mountain School to an out-of-state residential facility in September 2019.  Otherwise, generally denied.

Paragraph 91: Specifically admitted that T.L. saw their clinician for individual sessions at the out-of-state facility.  Lack knowledge or information sufficient to form a belief about the

truth of the allegation regarding T.L. usually seeing a clinician via video once per week for a family session with their mother. Otherwise, generally denied.

Paragraph 92: Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding what T.L. subjectively perceives. Otherwise, generally denied.

Paragraph 93: Specifically admitted that T.L. was not permitted to have certain items within the common meaning of toiletries in their room at the out-of-state facility; that T.L. was not permitted to purchase certain items within the common meaning of toiletries while at the out-of-state facility. Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding what personal toiletries, including shampoo and perfume, T.L. subjectively prefers. Otherwise, generally denied.

Paragraph 94: Specifically admitted that T.L. has been physically restrained at the out-of-state facility. Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding what T.L. has subjectively witnessed with respect to staff of the out-of-state facility physically restraining other youth; and about the truth of the allegation regarding what T.L. subjectively finds upsetting, anxiety-provoking, and harmful to their self-esteem. Otherwise, generally denied.

Paragraph 95: Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding T.L. not having any friends outside of the out-of-state facility. Otherwise, generally denied.

Paragraph 96: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, lack knowledge or information sufficient to form a belief about the truth of the allegation regarding T.L.' subjective awareness of the appointment of a CASA or guardian ad litem appointed to them; about the truth of the allegation regarding

T.L.'s subjective awareness of their mother's representation in court; and about the truth of the allegation regarding T.L.'s subjective wishes.  Otherwise, generally denied.

Paragraph 97: Specifically admitted that T.L. has two younger siblings who have been placed in a foster home; that T.L. asked to live with their siblings in the foster home; and that DCYF informed T.L. that T.L. would not be able to live with their siblings in the foster home. Otherwise, generally denied.

Paragraph 98: Lack knowledge or information sufficient to form a belief about the truth of the allegations regarding what T.L. does not subjectively recall; and about the truth of the allegation regarding what T.L. subjectively heard.  Otherwise, generally denied.

Paragraph 99: Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding T.L.'s subjective wishes and desires; and about the truth of the allegation regarding unspecified supports and services.  Otherwise, generally denied.

Paragraph 100: Specifically admitted that on January 5, 2021, R.K. was fourteen years old; that R.K. was removed from their home by DCYF in 2018 due to allegations of neglect; and that at all times since R.K.'s removal from their home in 2018, R.K. has remained in DCYF's custody.  Otherwise, generally denied.

Paragraph 101: Specifically admitted that R.K. has been diagnosed with ADHD; and that R.K.'s father was incarcerated.  Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding substantial limits on R.K.'s ability to function, including substantial limits on their ability to focus, learn, and control their impulses; and about the truth of the allegation regarding R.K. having experienced significant trauma following the incarceration of their father.  Otherwise, generally denied.

Paragraph 102: Specifically admitted that R.K. was separated from their siblings when they were removed from their home in 2018 due to allegations of neglect; and that DCYF placed R.K. at Webster House after removing R.K. from their home in 2018. Otherwise, generally denied.

Paragraph 103: Specifically admitted that youth at Webster House may gain new privileges with increased age; and that as a twelve year old at Webster House, R.K. had the lowest level of privileges based on R.K.'s age at the time. Otherwise, generally denied.

Paragraph 104: Lack knowledge or information sufficient to form a belief about the truth of the allegations concerning what R.K. was not permitted to or was otherwise required to do at Webster House; about the truth of the allegation regarding R.K.'s subjective sense of privacy; and about the truth of the allegation regarding R.K.'s subjective feelings. Otherwise, generally denied.

Paragraph 105: Specifically admitted that DCYF transferred R.K. to Mount Prospect Academy's Comprehensive Assessment and Short-term Treatment ("CAST") Program in Plymouth, New Hampshire after an incident where R.K. damaged a telephone and washing machine by throwing items; that the CAST Program in Plymouth is approximately one hour away from R.K.'s home community. Otherwise, generally denied.

Paragraph 106: Specifically admitted that R.K. was further away from their family at the CAST Program in Plymouth than they were when R.K. resided at the Webster House; and that R.K. was removed from their public school in conjunction with being placed in the CAST Program. Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding R.K.'s subjective enjoyment of the public school; and about the truth of the allegation regarding unspecified success that R.K. experienced at the public school. Otherwise, generally denied.

Paragraph 107: Specifically admitted that R.K. did not attend public school while attending the CAST Program. Otherwise, generally denied.

Paragraph 108: Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding R.K.'s subjective feeling of isolation; and about the truth of the allegation regarding R.K. not subjectively feeling like they could relate to their peers. Otherwise, generally denied.

Paragraph 109: Lack knowledge or information sufficient to form a belief about the truth of the allegations regarding the number of times R.K. saw their mother and their siblings while at the CAST Program. Otherwise, generally denied.

Paragraph 110: Specifically admitted that DCYF transferred R.K. from the CAST Program at Mount Prospect Academy to the ERT program at Mount Prospect Academy. Otherwise, generally denied.

Paragraph 111: Specifically admitted that DCYF placed R.K. in the ERT Program; that R.K. had no delinquency convictions upon being placed in the ERT program; and that R.K. was legally ineligible for commitment to SYSC upon being placed in the ERT Program. Otherwise, generally denied.

Paragraph 112: Lack knowledge or information sufficient to form a belief about the truth of the allegations regarding R.K.'s subjective perceptions of the ERT Program; and about the truth of the allegations regarding R.K's subjective perception of the manner in which a staff member of the ERT program acted towards them. Otherwise, generally denied.

Paragraph 113: Specifically admitted that on multiple occasions while R.K. was placed at Mount Prospect Academy, R.K. was physically restrained as a result of conduct R.K. engaged in. Otherwise, generally denied.

Paragraph 114: Specifically admitted that the on-grounds school had significant differences from the public school R.K. attended. Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding teaching staff; about the truth of the allegation regarding the packets of worksheets. Otherwise, generally denied.

Paragraph 115: Lack information or knowledge sufficient to form a belief about the truth of the allegations regarding R.K. being confined to their room for drawing on a table; and about the truth of the allegations regarding R.K. consequently losing bathroom privileges, attempting to force their way to the bathroom, and sustaining a head injury. Otherwise, generally denied.

Paragraph 116: Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding the particular sport that R.K. subjectively prefers; and about the truth of the allegation regarding the subjective characterizations of R.K.'s recreational time as unenjoyable and not meaningful. Otherwise, generally denied.

Paragraph 117: Specifically admitted that while placed in the ERT program, R.K. was charged with and convicted of their first delinquency charges for conduct that occurred on the grounds of the ERT Program; and that R.K. was committed to SYSC. Otherwise, generally denied.

Paragraph 118: Specifically admitted that R.K. has an aunt in Manchester, New Hampshire who has expressed willingness and desire to care for R.K. Lack knowledge or information sufficient to form a belief about the truth of the allegations regarding R.K.'s subjective understandings. Otherwise, generally denied.

Paragraph 119: Generally denied.

Paragraph 120: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, lack knowledge or information sufficient to form a

19

belief about the truth of the allegation regarding R.K.'s subjective awareness. Otherwise, generally denied.

Paragraph 121: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, generally denied.

Paragraph 122: Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding R.K.'s subjective understanding. Otherwise, generally denied.

Paragraph 123: Generally denied.

Paragraph 124: Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding what R.K. recalls; and about the truth of the allegation regarding R.K.'s subjective awareness. Otherwise, generally denied.

Paragraph 125: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 126: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 127: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 128: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 129: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 130: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 131: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 132: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 133: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 134: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 135: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 136: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 137: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 138: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 139: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 140: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 141: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 142: No response is required because these allegations relate solely to a claim that the Court has dismissed.  Otherwise, the allegations are generally denied.

Paragraph 143: No response is required because these allegations relate solely to a claim that the Court has dismissed.  Otherwise, the allegations are generally denied.

Paragraph 144: No response is required because these allegations relate solely to a claim that the Court has dismissed.  Otherwise, the allegations are generally denied.

Paragraph 145: No response is required because these allegations relate solely to a claim that the Court has dismissed.  Otherwise, the allegations are generally denied.

Paragraph 146: No response is required because these allegations relate solely to a claim that the Court has dismissed.  Otherwise, the allegations are generally denied.

Paragraph 147: No response is required because these allegations relate solely to a claim that the Court has dismissed.  Otherwise, the allegations are generally denied.

Paragraph 148: No response is required because these allegations relate solely to a claim that the Court has dismissed.  Otherwise, the allegations are generally denied.

Paragraph 149: No response is required because these allegations relate solely to a claim that the Court has dismissed.  Otherwise, the allegations are generally denied.

Paragraph 150: No response is required because these allegations relate solely to a claim that the Court has dismissed.  Otherwise, the allegations are generally denied.

Paragraph 151: No response is required because these allegations relate solely to a claim that the Court has dismissed.  Otherwise, the allegations are generally denied.

Paragraph 152: No response is required because these allegations relate solely to a claim that the Court has dismissed.  Otherwise, the allegations are generally denied.

Paragraph 153: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied. To the extent these allegations do not relate solely to a claim that the Court has dismissed, they are generally denied.

Paragraph 154: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 155: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 156: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 157: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 158: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 159: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 160: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 161: Specifically admitted that 42 U.S.C. § 671(a) states, in part, that "[i]n order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which – . . . (16) provides for the development of a case plan (as defined in section 675(1) of this title and in accordance with the requirements of section 675a of this title) for each child receiving foster care maintenance payments under the State plan and provides for a case

review system which meets the requirements described in sections 675(5) and 675a of this title with respect to each such child"; that the term "case plan" is defined in 42 U.S.C. § 675(1); and that 45 C.R.F. § 1356.21(g) states, in part, that "[t]he case plan for each child must: . . . (2) Be developed within a reasonable period, to be established by the title IV-E agency, but in no event later than 60 days from the child's removal from the home pursuant to paragraph (k) of this section." Otherwise, generally denied.

Paragraph 162: Specifically admitted that 42 U.S.C. § 675a and 42 U.S.C. § 675(1)(A)-(G), as cited, speak for themselves. Otherwise, generally denied.

Paragraph 163: Specifically admitted that Plaintiffs accurately quote 45 C.F.R. § 1356.21(g)(1), in part; and that Plaintiffs accurately quote 42 U.S.C. § 675(1)(B), in part. Otherwise, generally denied.

Paragraph 164: Specifically admitted that 42 U.S.C. §§ 622, 671(a)(1)(16), 675(5), and 675a, as cited, speak for themselves. Otherwise, generally denied.

Paragraph 165: Specifically admitted that RSA 170-G:4, III, and N.H. ADMIN. RULES, HE-C 6339.03(r), as cited, speak for themselves. Otherwise, generally denied.

Paragraph 166: Specifically admitted that DCYF recognizes the importance of involving children and families in timely and ongoing case planning and implementation. Otherwise, generally denied.

Paragraph 167: Specifically admitted that case plans identify important goals and tasks related to achieving a level of safety, permanency, and well-being for Plaintiffs and their families. Otherwise, generally denied.

Paragraph 168: Generally denied.

Paragraph 169: Generally denied.

Paragraph 170: Generally denied.

Paragraph 171: Generally denied.

Paragraph 172: Specifically admitted that DCYF Family Assessment and Inclusive Reunification ("FAIR") meetings provided an opportunity to discuss case plans and engage family and youth in decisions about safety, permanency, and well-being.  Otherwise, generally denied.

Paragraph 173: Generally denied.

Paragraph 174: Specifically admitted that the 2018 *Child and Family Services Review – New Hampshire Final Report* ("CFSR 2018") found, in part, that Item 13 thereto "was rated as a Strength in 63% of the 40 applicable foster care cases"; that Item 13 thereto was designated as "Child and Family Involvement in Case Planning"; and that the "[p]urpose of [a]ssessment" regarding Item 13 was "[t]o determine whether, during the period under review, concerted efforts were made (or are being made) to involve parents and children (if developmentally appropriate) in the case planning process on an ongoing basis."  Also specifically admitted that the CFSR 2018 found, in part, with respect to Item 20 thereto, that: "Stakeholders also said that although there are case plan, they were concerned that the plans were generic, and that a true family voice was lacking when generating plans"; that Item 20 thereto was designated as "Written Case Plan"; and that the description of Item 20 states that "[t]he case review system is functioning statewide to ensure that each child has a written case plan that is developed jointly with the child's parent(s) and includes the required provisions."  Otherwise, generally denied.

Paragraph 175: Specifically admitted that the Program Improvement Plan developed in response to the 2010 CFSR ("2011 PIP") identified "[l]ack of involvement of the child/youth and parents in case planning" and "[o]lder youth not engaged in case planning" as "key concerns

identified in CFSR"; and that the Program Improvement Plan developed in response to the 2018

CFSR ("2019 PIP") identified family engagement in case planning as an area in continuing need

of improvement.  Otherwise, generally denied.

Paragraph 176: Generally denied.

Paragraph 177: Specifically admitted that Plaintiffs accurately quote DCYF's 2018

Adequacy and Enhancement Assessment, in part.  Otherwise, generally denied.

Paragraph 178: Generally denied.

Paragraph 179: Generally denied.

Paragraph 180: Generally denied.

Paragraph 181: Generally denied.

Paragraph 182: Generally denied.

Paragraph 183: Generally denied.

Paragraph 184: Lack knowledge or information sufficient to form a belief about the truth

of the allegation regarding Plaintiffs' subjective understandings.  Otherwise, generally denied.

Paragraph 185: Generally denied.

Paragraph 186: Specifically admitted that Plaintiffs accurately quote 42 U.S.C. §

12101(b)(1), in part.  Otherwise, generally denied.

Paragraph 187: Specifically admitted that Plaintiffs accurately quote 42 U.S.C. §

12101(a)(2), in part; and that Plaintiffs accurately quote 42 U.S.C. § 12101(a)(3), in part.

Otherwise, generally denied.

Paragraph 188: Specifically admitted that Plaintiffs accurately quote 42 U.S.C. § 12132,

in part; that Plaintiffs accurately quote 28 C.F.R. § 35.130(d), in part; and that Plaintiffs

accurately quote the United States Supreme Court's opinion in <u>Olmstead v. L.C. ex rel. Zemring</u>, in part. Otherwise, generally denied.

Paragraph 189: Specifically admitted that Plaintiffs accurately quote 28 C.F.R. § 35.130(b)(3), in part. Otherwise, generally denied.

Paragraph 190: Specifically admitted that Plaintiffs accurately quote 28 C.F.R. § 35.130(b)(7), in part. Otherwise, generally denied.

Paragraph 191: Specifically admitted that Plaintiffs accurately quote 29 U.S.C. § 794, in part. Otherwise, generally denied.

Paragraph 192: Specifically admitted that 28 C.F.R. § 41.51(d) states: "Recipients shall administer programs and activities in the most integrated setting appropriate to the needs of the qualified handicapped persons"; and that 28 C.F.R § 41.51(b)(3) states, in part: "A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (i) That have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap . . . ." Otherwise, generally denied.

Paragraph 193: Generally denied.

Paragraph 194: Specifically admitted that Plaintiffs accurately quote the definition of "qualified individual with a disability" as set forth in 42 U.S.C. § 12131; and that 28 C.F.R. § 35.130(b)(7), as cited, speaks for itself. Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding Plaintiffs being qualified individuals with disabilities within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act. Otherwise, generally denied.

Paragraph 195: Specifically admitted that each Plaintiff has a mental impairment, a record of such mental impairment, or is regarded as having such an impairment. Lack

knowledge or information sufficient to form a belief about the truth of the allegation that such impairment substantially limits one or more major life activities of each Plaintiff. Otherwise, generally denied.

Paragraph 196: Lack knowledge or information sufficient to form a belief about the truth of the allegations concerning unspecified treatment needs and unspecified community-based settings; and about the truth of the allegation concerning Plaintiffs' subjective desires. Otherwise, generally denied.

Paragraph 197: Specifically admitted that DHHS is a state agency; that DHHS provides child protection services to children under its protective supervision or legal custody; that DHHS receives federal financial assistance; and that federal laws, including provisions of the ADA and Rehabilitation Act, apply to DHHS. Otherwise, generally denied.

Paragraph 198: Specifically admitted that DHHS is a public entity; that the Division of Medicaid Services is a division of DHHS; and that the DCYF is a division of DHHS. Otherwise, generally denied.

Paragraph 199: Generally denied.

Paragraph 200: Generally denied.

Paragraph 201: Specifically admitted that Plaintiffs accurately quote DCYF Policy Directive 15-05, in part. Otherwise, generally denied.

Paragraph 202: Generally denied.

Paragraph 203: Generally denied.

Paragraph 204: Specifically admitted that the 2018 Annual Report of the State of New Hampshire Office of the Child Advocate states, in part: "The limitations of home and community-based services, as well as limited residential options, have frequently pushed DCYF

28

to seek any available bed, rather than specific clinically matching programs."  Otherwise, generally denied.

Paragraph 205: Generally denied.

Paragraph 206: Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding G.K.'s subjective view of staff; and about the truth of the allegation regarding G.K.'s subjective wishes.  Otherwise, generally denied.

Paragraph 207: Specifically admitted that C.I. has been physically restrained while in DCYF's custody; that C.I. did not have complete freedom to engage in any activity they enjoyed while in DCYF's custody; and that C.I. has been placed in a community outside of New Hampshire.  Lack knowledge or information sufficient to form a belief about the truth of the allegation concerning C.I.'s subjective cravings.  Otherwise, generally denied.

Paragraph 208: Lack knowledge or information sufficient to form a belief about the truth of the allegation concerning T.L.'s subjective perception of what is painful; about the truth of the allegation concerning T.L.'s subjective perception of what is a regular basis; and about the truth of the allegation concerning T.L. not having any "friendships" outside of the out-of-state facility. Otherwise, generally denied.

Paragraph 209: Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding R.K. not being permitted to go into the community; about the truth of the allegation regarding R.K. not being allowed to participate in activities they enjoy; about the truth of the allegation regarding R.K.'s subjective ability to relate to their peers; about the truth of the allegation regarding R.K. seeing their mother and siblings rarely; about the truth of the allegation regarding R.K. being threatened; about the truth of the allegation regarding R.K. being physically restrained repeatedly; about the truth of the allegation regarding R.K. suffering a head

injury; and about the truth of the allegation regarding R.K.'s grandmother's subjective wishes. Otherwise, generally denied.

Paragraph 210: Specifically admitted that RSA 126-A:4 states, in part, that DHHS "shall be organized to provide a comprehensive and coordinated system of health and human services as needed to promote and protect the health, safety, and well-being of the citizens of New Hampshire. Such services shall be directed at supporting families, strengthening communities, and developing the independence and self-sufficiency of New Hampshire citizens to the extent possible." Otherwise, generally denied.

Paragraph 211: Specifically admitted that it is important to have infrastructure that supports the availability of placements in the least restrictive settings appropriate to the needs of children in DCYF's custody. Otherwise, generally denied.

Paragraph 212: Specifically admitted that the July 10, 2020 issue briefing of the State of New Hampshire Office of the Child Advocate states, in part: "The benefits of home or home-like placements were echoed in a recent review of New Hampshire's residential services. Therapeutic foster care was identified as a significant gap in the array of services meant to best meet the needs of children. As a result, the implementation of increased capacity of therapeutic foster homes is now integrated into the residential services re-design." Otherwise, generally denied.

Paragraph 213: Generally denied.

Paragraph 214: Specifically admitted that Plaintiffs accurately quote the 2018 CFSR, in part; and that Plaintiffs appropriately reference the 2019 PIP. Otherwise, generally denied.

Paragraph 215: Lack information or knowledge sufficient to form a belief about the truth of the allegation regarding unspecified reports. Otherwise, generally denied.

Paragraph 216: Specifically admitted that home and community services are accessible to youth in DCYF's custody.  Otherwise, generally denied.

Paragraph 217: Specifically admitted that New Hampshire is experiencing a workforce shortage in the mental health care sector; and that the workforce shortage can reduce access to services.  Otherwise, generally denied.

Paragraph 218: Lack knowledge or information sufficient to form a belief about the truth of the allegation concerning unspecified services.  Otherwise, generally denied.

Paragraph 219: Lack knowledge or information sufficient to form a belief about the truth of the allegation concerning unspecified services.  Otherwise, generally denied.

Paragraph 220: Generally denied.

Paragraph 221: Generally denied.

Paragraph 222: Generally denied.

Paragraph 223: Specifically admitted that Plaintiffs accurately quote DCYF's 2018 Adequacy and Enhancement Assessment, in part.

Paragraph 224: Generally denied.

Paragraph 225: Generally denied.

Paragraph 226: Generally denied.

Paragraph 227: Lack knowledge or information sufficient to form a belief about the truth of the allegation regarding the reasonableness of unspecified modifications.  Otherwise, generally denied.

Paragraph 228: Generally denied.

Paragraph 229: No response is required because these allegations relate solely to a claim that the Court has dismissed.  Otherwise, Defendants hereby incorporate by reference their

responses to the foregoing paragraphs of Plaintiffs' Class Action Complaint as though fully set forth herein.

Paragraph 230: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 231: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 232: No response is required because these allegations relate solely to a claim that the Court has dismissed. Otherwise, the allegations are generally denied.

Paragraph 233: Defendants hereby incorporate by reference their responses to the foregoing paragraphs of Plaintiffs' Class Action Complaint as though fully set forth herein.

Paragraph 234: Generally denied.

Paragraph 235: Generally denied.

Paragraph 236: Generally denied.

Paragraph 237: Defendants hereby incorporate by reference their responses to the foregoing paragraphs of Plaintiffs' Class Action Complaint as though fully set forth herein.

Paragraph 238: Lack knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiffs have mental impairments that substantially limit one or more major life activities such that they are individuals with disabilities within the meaning of the ADA. Otherwise, generally denied.

Paragraph 239: Specifically admitted that there are circumstances under which Plaintiffs may be placed in residential or group care facilities as appropriate for their needs while in DCYF's custody. Otherwise, generally denied.

Paragraph 240: Generally denied.

Paragraph 241: Specifically admitted that Defendants are officials of public entities within the meaning of the ADA, as codified at 42 U.S.C. § 12131(1). Otherwise, generally denied.

Paragraph 242: Specifically admitted that Title II of the ADA, as codified at 42 U.S.C. § 12132, and its implementing regulation codified at 28 C.F.R. § 35.130(d), apply to Defendants; and that both the statute and the regulation speak for themselves. Otherwise, generally denied.

Paragraph 243: Specifically admitted that 28 C.F.R. § 35.130(b)(7) applies to Defendants; and that the regulation speaks for itself. Otherwise, generally denied.

Paragraph 244: Generally denied.

Paragraph 245: Generally denied.

Paragraph 246: Generally denied.

Paragraph 247: Defendants hereby incorporate by reference their responses to the foregoing paragraphs of Plaintiffs' Class Action Complaint as though fully set forth herein.

Paragraph 248: Specifically admitted that there are circumstances under which Plaintiffs may be placed in residential or group care facilities as appropriate for their needs while in DCYF's custody. Otherwise, generally denied.

Paragraph 249: Specifically admitted that Title II of the ADA, as codified at 42 U.S.C. § 12132 and as implemented by 28 C.F.R. § 35.130, applies to Defendants in their official capacities. Otherwise, generally denied.

Paragraph 250: Specifically admitted that 28 C.F.R. § 35.130(b)(3) applies to Defendants in their official capacities; and that Plaintiffs accurately quote 28 C.F.R. § 35.130(b)(3), in part.

Paragraph 251: Generally denied.

Paragraph 252: Generally denied.

Paragraph 253: Defendants hereby incorporate by reference their responses to the foregoing paragraphs of Plaintiffs' Class Action Complaint as though fully set forth herein.

Paragraph 254: Lack knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiffs have mental impairments that substantially limit one or more major life activities, or have record of such impairments, or are perceived as having such impairments, such that they each have a disability within the meaning of the Rehabilitation Act and its implementing regulations. Otherwise, generally denied.

Paragraph 255: Specifically admitted that 45 C.F.R. § 84.3(l)(4) is a regulation that implements the Rehabilitation Act. Lack knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiffs are qualified individuals with disabilities within the meaning of the Rehabilitation Act and its implementing regulations. Otherwise, generally denied.

Paragraph 256: Specifically admitted that the State of New Hampshire's Medicaid and child protection services are programs or activities that receive Federal financial assistance within the meaning of 29 U.S.C. § 794(b) and its implementing regulations. Otherwise, generally denied.

Paragraph 257: Generally denied.

Paragraph 258: Generally denied.

Paragraph 259: Generally denied.

Paragraph 260: Generally denied.

Paragraph 261: Defendants hereby incorporate by reference their responses to the foregoing paragraphs of Plaintiffs' Class Action Complaint as though fully set forth herein.

Paragraph 262: Specifically admitted that there are circumstances under which Plaintiffs may be placed in residential or group care facilities as appropriate for their needs while in DCYF's custody.  Otherwise, generally denied.

Paragraph 263: Specifically admitted that the State of New Hampshire's Medicaid and child protection services are programs or activities that receive Federal financial assistance within the meaning of 29 U.S.C. § 794(b) and its implementing regulations.  Otherwise, generally denied.

Paragraph 264: Specifically admitted that Section 504 of the Rehabilitation Act, as codified at 29 U.S.C. § 794, applies to Defendants in their official capacities; and that 45 C.F.R. § 84.4(b) is a regulation the implements Section 504 of the Rehabilitation Act and applies to Defendants; and that Defendants are prohibited from discriminating against individuals with disabilities within the meaning of the Rehabilitation Act and its implementing regulations. Otherwise, generally denied.

Paragraph 265: Specifically admitted that Plaintiffs accurately quote 45 C.F.R. § 84.4(b), in part; and that 45 C.F.R. § 84.4(b) applies to Defendants.  Otherwise, generally denied.

Paragraph 266: Generally denied.

Paragraph 267: Generally denied.

Paragraph 268: Defendants generally deny that Plaintiffs are entitled to the relief requested in their Class Action Complaint or to a judgment in their favor.

### AFFIRMATIVE DEFENSES

In asserting the following affirmative defenses to Plaintiffs' claims, Defendants do not concede that the assertion of such defenses imposes any burden of proof on Defendants with respect thereto.

- **First Affirmative Defense** – Plaintiffs' claims are barred, in whole or in part, because the Class Action Complaint fails to state a claim upon which relief can be granted.

- **Second Affirmative Defense** – Plaintiffs' claims are barred, in whole or in part, by the doctrine of mootness.

- **Third Affirmative Defense** – Plaintiffs' claims are barred, in whole or in part, because the integration mandate is ultra vires.

- **Fourth Affirmative Defense** – Plaintiffs claims are barred, in whole or in part, because Defendants have made reasonable modifications in policies, practices, or procedures to avoid discrimination on the basis of disability.

- **Fifth Affirmative Defense** – Plaintiffs' claims are barred, in whole or in part, because Plaintiffs seek modifications that would fundamentally alter the nature of the services at issue and would result in an undue burden.

- **Sixth Affirmative Defense** – Plaintiffs' claims are barred, in whole or in part, because New Hampshire's treatment professionals have determined that Plaintiffs' placements are appropriate for their needs.

- **Seventh Affirmative Defense** – Plaintiffs' claims are barred, in whole or in part, because they do not enjoy private rights of action under the Adoption Assistance and Child Welfare Act of 1980.

- **Eighth Affirmative Defense** – Plaintiffs' claims are barred, in whole or in part, by the doctrine of sovereign immunity and under the Eleventh Amendment.

Defendants presently have insufficient knowledge or information upon which to form a belief as to whether they may have available other, as yet unstated, defense or affirmative defenses. Therefore, Defendants reserve the right to assert any additional defenses or affirmative defenses that discovery indicates may be appropriate. Defendants reserve the right to amend or to seek to amend their answer and/or affirmative defenses.

WHEREFORE, Defendants request judgment dismissing Plaintiffs' Class Action Complaint and denying any and all relief sought by Plaintiffs.

Respectfully submitted,

CHRISTOPHER T. SUNUNU, in his official capacity as Governor of the State of New Hampshire, LORI SHIBINETTE, in her official capacity as Commissioner of the New Hampshire Department of Health and Human Services, JOSEPH RIBSAM, in his official capacity as Director of the Division for Children, Youth and Families, and HENRY LIPMAN, in his official capacity as Director of New Hampshire Medicaid Services

By their attorney,

JOHN M. FORMELLA
NEW HAMPSHIRE ATTORNEY GENERAL

Date: October 4, 2021          By: /s/ Nathan W. Kenison-Marvin
                               Jennifer S. Ramsey, Bar No. 268964
                               Assistant Attorney General
                               Nathan W. Kenison-Marvin, Bar No. 270162
                               Attorney
                               New Hampshire Department of Justice
                               Civil Bureau
                               33 Capitol Street
                               Concord, NH 03301-6397
                               (603) 271-3650
                               jennifer.s.ramsey@doj.nh.gov
                               nathan.w.kenison-marvin@doj.nh.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2021, copies of the foregoing were electronically served upon all counsel of record in this matter, by way of the Court's electronic filing system.

/s/ Nathan W. Kenison-Marvin
Nathan W. Kenison-Marvin