UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| G.K, by their next friend, Katherine Cooper, et al.<br><br>Plaintiffs,<br><br>v.<br><br>Christopher Sununu, in his official capacity as the Governor of New Hampshire, et al.<br><br>Defendants. | Case No. 1:21-cv-0004 |

**DECLARATION OF JULIA M. SIEGENBERG IN SUPPORT OF
DEFENDANT'S OBJECTION TO PLAINTIFFS' MOTION TO COMPEL**

1. My name is Julia M. Siegenberg, and I am outside counsel for Defendants in the above-captioned matter.

2. At a hearing on August 11, 2022, Magistrate Judge Johnstone asked Defendants to estimate the time spent by the Department of Health and Human Services ("DHHS") to produce various components of the Case File documents for the four named Plaintiffs in this litigation, in order to estimate the time needed to produce similar information for approximately 180 youth aged 14 to 17 who are potentially members of the putative class.

3. For the Court's convenience, the estimates provided herein are summarized in an Appendix.

**I.  Time and Resources Required for Production of Named Plaintiffs' Case File Documents**

4. Based on my review of documents produced by Defendants, the average number of pages produced for each named Plaintiff's Case File was 3,902. The total number of pages produced in the initial production for each named Plaintiff's Case File was as follows:

1

      a. GK: 805 total pages

      b. CI: 7,670 total pages

      c. TL: 4,306 total pages

      d. RK: 2,828 total pages

5. These Case File documents for the four named Plaintiffs can be separated into three different categories, based on how the documents are stored: (A) Physical File, (B) E-Folder, and (C) Bridges Contact Log reports.

    **A.**     **Physical File**

6. Caseworkers maintain a Physical (paper) File containing Case File documents for children in foster care.

7. To produce the Case File documents for each of the four named Plaintiffs, DHHS staff identified, located and gathered the paper Case File documents maintained in the Physical Files of each named Plaintiff.

8. DHHS staff manually scanned these paper documents to create an electronic copy of the respective Physical Files that could be sent to DHHS counsel for review and production.

9. **The District Office supervisors who oversaw the production of the Case Files for the named Plaintiffs provided me with the following estimates of DHHS staff time spent to preparing the respective Physical Files that for review by DHHS counsel:**

      a. **GK: 5 hours.**

      b. **CI: 10 to 11 hours.**

      c. **TL: 10 to 12 hours.**

      d. **RK: 5 hours.**

10. **That is, according to estimates provided by the District Office supervisors, it took DHHS staff an average of approximately 7.87 hours to create an electronic copy of a**

**Physical File.**

11. The estimates in the preceding paragraphs do not include the time spent by DHHS counsel to review the information from the Physical File for each of the named Plaintiffs in preparing the documents for production.

**B.  E-Folder**

12. Case File documents can be stored electronically in Bridges by scanning and uploading the document to Bridges using the Document Imaging application. Every document that is scanned and uploaded through Document Imaging is indexed or tagged to associate it with at least one client identification number and one case identification number. Each such document is stored in the individual child's "E-Folder".

13. To produce the E-Folder documents for each of the four named Plaintiffs, DHHS staff undertook the following actions:

   a. In Bridges, select "Documents" in the tool bar. In the Document Imaging menu, select "E-Folder". This brings the worker to the E-Folder search screen.

   b. On the E-Folder search screen, the worker must fill in the search criteria to search by client identification number. This will generate a list of all documents scanned through Document Imaging that are indexed with the individual child's client identification number.

   c. The worker must then open each individual document separately and then download that individual document to a local drive. Once downloaded, the worker can electronically send the document to DHHS counsel for review and production.

14. Based on my review of documents produced by Defendants, and discussion with DHHS staff familiar with the Document Imaging process, the four named Plaintiffs had an average

of 137 documents in their E-Folders. The total number of documents and corresponding pages produced from each named Plaintiff's E-Folder is approximately as follows:

    a. GK: 40 documents, totaling 167 total pages

    b. CI: 248 documents, totaling 1,186 total pages

    c. TL: 129 documents, totaling 784 total pages

    d. RK: 131 documents, totaling 561 total pages

15. In June 2019, DHHS began implementing Document Imaging capabilities on a rolling basis by District Office. It is my understanding that DHHS staff operationalized Document Imaging on a prospective basis. In other words, paper documents in a child's Physical File prior to implementation of Document Imaging within a particular District Office were generally not scanned and uploaded to Bridges; only paper documents that were created or received by the caseworker after the implementation of Document Imaging within a particular District Office were scanned and uploaded.

16. Based on my review of the documents, it appears that the earliest date that documents were scanned through Document Imaging and stored in each named Plaintiff's E-Folder are as follows:

    a. GK: November 8, 2019

    b. CI: November 25, 2019

    c. TL: October 16, 2019

    d. RK: October 31, 2019

17. **The District Office supervisors who oversaw the production of the Case Files for the named Plaintiffs provided me with the following estimates of DHHS staff time spent to produce the documents in the E-Folder for each of the named Plaintiffs:**

      a. **GK: 1.5 hours.**

      b. **CI: 3 hours.**

      c. **TL: 7.5 hours.**

      d. **RK: 1.5 hours.**

18. **That is, according to estimates provided by the District Office supervisors, it took DHHS staff an average of 3.4 hours for each named Plaintiff to produce the documents in the E-Folder to DHHS counsel for review.**

19. The estimates in the preceding paragraphs do not include the time spent by DHHS counsel to review the information from the E-Folder for each of the named Plaintiffs in preparing the documents for production.

    **C.**    **Bridges Contact Log Report**

20. There are several electronic "reports" that automatically populate with information from Bridges. The Contact Log report provides information regarding every contact and visit associated with a case identification number.

21. To produce the Case File documents for each of the four named Plaintiffs, DHHS staff searched for and collected the Contact Log reports of each named Plaintiff. To do so, DHHS staff undertook the following actions:

    a. The worker must search in Bridges for each case identification number associated with the named Plaintiff.

    b. Once in the specific case, select "Contact" in the tool bar. This will display the Contact Log for the case and allow for it to be printed as a report.

    c. The worker must then download the Contact Log report to a local drive. Once downloaded, the worker can electronically send the document to DHHS counsel for review and production.

22. Based on my review of documents produced by Defendants, the average number of pages for the named Plaintiffs' Contact Log reports is 541 pages. The total number of pages produced for each named Plaintiff's Contact Log reports is approximately as follows:

    a. GK: 88 pages

    b. CI: 1,240 pages

    c. TL: 162 pages

    d. RK: 675 pages

23. **The District Office supervisors who oversaw the production of the Case Files for the named Plaintiffs provided me the following estimates of DHHS staff time spent to produce the information in the Contact Logs for each of the named Plaintiffs:**

    a. **GK: 40 minutes.**

    b. **CI: 30 minutes.**

    c. **TL: 30 minutes.**

    d. **RK: 40 minutes.**

24. **That is, according to estimates provided by the District Office supervisors, it took DHHS staff an average of 35 minutes to produce the information in the Contact Logs for each named Plaintiff.**

25. The estimates in the preceding paragraphs do not include the time spent by DHHS counsel to review the information from the Contact Logs for each of the named Plaintiffs in preparing the documents for production.

II. **Additional Bridges Information that may be Available**

26. Information that is entered into the Bridges application is stored in data tables that correspond to the various Bridges screens and information fields.

27. A data dictionary provides all of the data tables and fields used by DHHS to run

reports and query information electronically entered through Bridges. The current data dictionary shows over 500 data tables containing over 14,000 fields of information.

28. Counsel for DHHS recently learned that there may be a way to extract data entered into Bridges for each of the named Plaintiffs by creating a new computer code to query data tables based on the unique client identification numbers of each of the named Plaintiffs.

29. DHHS and New Hampshire's Department of Information Technology are in the process of creating and testing a computer code to determine if there is a way to extract and produce this Bridges data about the named Plaintiffs. If this is possible without undue burden, this Bridges data will be provided to Plaintiffs' counsel as a supplement to the earlier production.

**III. Additional Time Related to Redaction**

30. The above estimates related to the named Plaintiffs do not include any attorney or other time necessary to redact personally identifiable information. DHHS feels very strongly that any additional Case File documents produced without written consent of the child and biological parent(s) would need to be redacted to remove information that identifies the child or their parent(s). This concern is rooted not only in the state law confidentiality provisions generally, *see* N.H. Rev. Stat. Ann. § 170-G:8-a, but also the critical purposes those confidentiality provisions serve, including the encouragement of reporting of child abuse and neglect by community members who rely on the promise of confidentiality and DHHS's ability to build and maintain trusting relationships with the children and families who receive child protective services. DHHS does not believe that these concerns are satisfied through the Protective Order.

31. DHHS is presently evaluating whether to notify all non-party children whose records are produced to Plaintiffs' Counsel of that disclosure, if the Court orders production of such records.

32. Based on the Case File production for the four named Plaintiffs, in the event DHHS

were ordered to produce additional Case Files, counsel estimates that, on average, an additional 50 hours per child would be required to redact personally identifiable information.

**IV. Data Production Related to Putative Class Members**

33. In response to Plaintiffs' interrogatories, Defendants have produced to Plaintiffs the following individualized data related to each foster youth, aged 14 to 17, in the legal custody or protective supervision of DCYF, as of January 12, 2022:

   a. Age
   b. Gender
   c. Ethnicity
   d. County
   e. Psychiatric diagnosis
   f. Psychiatric history
   g. Psychiatric recommendation
   h. Date entered into custody
   i. Date left custody
   j. Start and end date of each placement
   k. Placement type for each placement
   l. If there were siblings in foster care
   m. Mental health characteristics documented
   n. Date mental health characteristics documented

34. Defendants are working to produce the same set of data points listed in the preceding paragraph, but updated to be as of April 26, 2022.  In addition to the data points listed in the preceding paragraph, this updated data set will also include two new data points for each foster youth, aged 14 to 17, in the legal custody or protective supervision of DCYF:

       a. Medical history

       b. Medication history

35. Defendants have produced the following aggregate data related to all foster youth, aged 14 to 17, in the legal custody or protective supervision of DCYF in 2018 through 2021, by year:

       a. Number of children in each placement type

       b. Number of placements in each placement type

       c. Number of distinct providers for each placement type

       d. Number of placements or "beds" available for each placement type

       e. Payments to foster care placement providers by placement type

36. Defendants are working to produce data related to the number of foster youth, aged 14 to 17, in the legal custody or protective supervision of DCYF, entering extended foster care, by placement type, between 2018 and the present.

37. Defendants are working to produce the following individualized data related to each foster youth, aged 14 to 17, who exited DCYF legal custody or protective supervision in 2020 and 2021:

       a. Dates of entry into and exit from foster care

       b. Dates of entry into and exit from each placement

       c. Number of placements by placement type

       d. Number of days placed in a residential treatment setting, by level of care

       e. Number of days placed in a community-based placement, by placement type

38. DHHS maintains regular data reports containing the following information, and are willing and able to produce such data reports to Plaintiffs, if requested by Plaintiffs through an

appropriate discovery request:

    a. Maltreatment in care: children in foster care who have experience maltreatment while in care

    b. Permanency: children in foster care who achieve permanency in 12, 18 and 24 months

    c. Placement stability: placement moves for children in foster care, per 1000 days in care

    d. Discharge reason: children leaving foster care by exit or "discharge" reason

    e. Initial placement with relatives: children entering foster care that were placed with relatives upon removal

    f. Caseworker visits: months during which children had at least one face-to-face visit with their caseworker

    g. Placement count: number of placements for children in foster care

    h. Placement location: children in a placement setting located in the same or adjoining county from which they were removed

    i. Placement setting: placement moves to a less restrictive or more restrictive placement type

    j. Placement type: children in foster care by placement type

    k. Sibling placement: children in foster care who are placed with at least one or all of their siblings

39. To date, Plaintiffs have not requested any of the data reports described in the preceding paragraph.

## V. Electronic Communication Production Related to Named Plaintiffs

40. To the extent it is helpful in assessing the burden of Plaintiffs' request for all

"communications concerning each child, their Case Plan, or their care," at the August 11, 2022 hearing, Defendants offered to estimate the time spent by DHHS counsel to produce electronic communications related to the named Plaintiffs thus far.

41. The parties are still in the process of negotiating search terms for electronic communications, using the e-mail inboxes of nine custodians to run proposed search terms. Of the nine custodians, two are caseworkers.

42. Plaintiffs proposed search terms related to each of the four named Plaintiffs. The total number of documents containing the named Plaintiff-specific terms is as follows:

   a. GK: 1,086 documents

   b. CI: 2,023 documents

   c. TL: 56,153 documents

   d. RK: 2,701 documents

43. Of the 1,086 documents containing the proposed search terms specific to GK, 610 documents were produced as responsive to Plaintiffs' Requests for Production of Documents and not protected by privilege. DHHS counsel estimate that they spent approximately 20 hours reviewing, redacting and producing these documents.

I swear under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

DATE: August 18, 2022

/s/ Julia M. Siegenberg
Julia M. Siegenberg

## Appendix

|  | GK | CI | TL | RK | **Average** |
|---|---|---|---|---|---|
| Physical File (¶¶ 9-10) | Pages: 550<br><br>Time: 5 hours | Pages: 5,244<br><br>Time: 10-11 hours | Pages: 3,360<br><br>Time: 10-12 hours | Pages: 1,592<br><br>Time: 5 hours | **Pages: 2,686**<br><br>**Time: 7.87 hours** |
| E-Folder (¶¶ 14, 17-18) | Pages: 167<br><br>Documents: 40<br><br>Time: 1.5 hours | Pages: 1,186<br><br>Documents: 248<br><br>Time: 3 hours | Pages: 784<br><br>Documents: 129<br><br>Time: 7.5 hours | Pages: 561<br><br>Documents: 131<br><br>Time: 1.5 hours | **Pages: 674**<br><br>**Documents: 137**<br><br>**Time: 3.4 hours** |
| Contact Logs (¶¶ 22-24) | Pages: 88<br><br>Time: 40 minutes | Pages: 1,240<br><br>Time: 30 minutes | Pages: 162<br><br>Time: 30 minutes | Pages: 675<br><br>Time: 40 minutes | **Pages: 541**<br><br>**Time: 35 minutes** |
| Total (¶¶ 4) | Pages: 805<br><br>Time: 7.17 hours | Pages: 7,670<br><br>Time: 14 hours | Pages: 4,306<br><br>Time: 18-20 hours | Pages: 2,828<br><br>Time: 7.17 hours | **Pages: 3,902**<br><br>**Time: 11.83 hours** |

**CERTIFICATE OF SERVICE**

I, Julia Siegenberg, hereby certify that I caused a true and correct copy of the foregoing to be filed through the ECF system and served electronically on the registered participants as identified on the Notice of Electronic Filing.

August 18, 2022                                                             /s/ Julia M. Siegenberg
                                                                                     Julia M. Siegenberg