IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| G.K., et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTOPHER SUNUNU, et al., <br><br> Defendants. | Case No. 21-CV-4-PB |

**PLAINTIFFS' REPLY TO THE DECLARATION OF JULIA M. SIEGENBERG (ECF NO. 108)**

Plaintiffs file this Reply to respond to the Declaration of Julia M. Siegenberg ("the Declaration," ECF No. 108), which Defendant Shibinette filed at the Court's direction for a statement of the time it would take for DHHS to produce the Foster Youth Case Files.[1] As explained below, the Declaration fails to show that production of the Foster Youth Case Files would be unduly burdensome, and Defendant Shibinette should be directed to produce the requested Case Files.

First, the Declaration is inherently unreliable as a statement by defense counsel, not an affidavit from a DHHS employee. It sheds no light on how the estimates the Declaration provides were actually compiled, such as whether they are based on actual time records maintained by the employees who did the work or simply guesses by supervisors of how long the work took. The Declaration instead continues Defendant's arguments made at the Motion hearing and in briefing,

---

[1] This Reply uses the same defined terms as those used in Plaintiffs' briefing in support of their Motion to Compel Production of Foster Youth Case Files (ECF No. 91).

rather than providing the specific information requested by the Court—the *actual* time needed for DHHS to produce the Case Files.

Second, the estimates in the Declaration contain inconsistencies that raise deep concerns about the Declaration's accuracy. The estimates appear to have no relation to the number of pages in a given file. For example, it supposedly took DHHS a total of 14 hours to compile C.I.'s file, which contains 7,670 pages, but 18 to 20 hours to compile T.L.'s file, which contains 4,306 pages. *See* Appendix to the Declaration. The averages Defendant provides are skewed based on these unexplained aberrations, and are unreliable estimates of the time it would take to produce the Foster Youth Case Files. These inconsistencies also show the pervasive problems in DHHS's case management practices—for example, the Declaration provides no explanation for why DHHS employees would take much longer to collect some Case Files than others.

Third, Defendant's statements regarding other data sets are irrelevant to the issue here—the time it would take DHHS to produce the Foster Youth Case Files. While Defendant has already produced some data (Declaration ¶ 33), as Plaintiffs have explained, that data was incomplete and inaccurate. *See* ECF No. 91-1 at 8-10. To the extent Defendant may produce supplemental data (Declaration ¶¶ 29, 34, 36, 37), Defendant agreed to produce that data months ago and Plaintiffs still have not received it. All of that data is responsive to Plaintiffs' discovery requests and should be produced, but should not impact a ruling compelling production of the Foster Youth Case Files, given the critical relevance of the Case Files to this case. *See* ECF No. 91-1 at 5-7. The Declaration also refers to other aggregate data reports in Defendant's possession (Declaration ¶ 38), which are likewise not a substitute for production of the Foster Youth Case Files. Those reports, while relevant to other systemic issues, will not show Defendant's case planning failures, or the fact that older youth with disabilities are being placed in facilities that are not the least restrictive setting

appropriate for their mental and behavioral health needs, as the Case Files will illustrate. *See* ECF No. 97 at 1-2.

Fourth, Defendant yet again recycles confidentiality arguments based on a state law that does not apply here. *See* Declaration ¶¶ 30-32. The Court should reject Defendant's claims of burden premised on additional time Defendant would purportedly spend redacting information from the Case Files, which Defendant estimates to be an astounding 50 hours per file. *See id.* ¶ 32. Any redactions would continue to be inappropriate as contrary to the federal law governing discovery in this action. *See* ECF No. 97 at 4. As this Court has found, the Protective Order provides strong confidentiality protection for the sensitive materials involved in this case.[2] *See* Order on Plaintiffs' Motion to Compel, ECF No. 75, at 8.

Finally, the Declaration's reference to ongoing discussions among the parties regarding ESI search terms (Declaration ¶¶ 41-43) is also irrelevant to the Motion. Plaintiffs are working in good faith to revise the search terms proposal for collecting ESI. Again, that ESI is not a substitute for the Case Files. Even so, the burden Defendant claims for redacting ESI is unreasonable (20 hours to review and redact 1,086 documents from an email inbox (*id.* ¶ 43)), and unnecessary in light of the Protective Order.

The Declaration fails to provide reliable, let alone persuasive, evidence of the burden DHHS would face in producing the Foster Youth Case Files. For all the reasons discussed in

---

[2] The Declaration states Defendant may communicate with all "non-party children" to notify them of any production of the Case Files to Plaintiffs. *See* Declaration ¶ 31. Given the adequacy of the Protective Order already in place, Defendant's threat appears more directed to creating ill-will toward the necessary discovery work in this litigation rather than protecting the youths' sensitive information. To the extent Defendant may move forward with this communication, the Court should require Defendants to involve Plaintiffs in those communications, including by notifying Plaintiffs beforehand and in helping to determine the content of any communication. Plaintiffs further reserve the right to seek Court intervention, including but not limited to a protective order to limit that possible communication between Defendant and the putative class members.

Plaintiffs' briefing, the Court should disregard the Declaration as insufficient evidence of DHHS's burden and order production of the Foster Youth Case Files.

Dated: August 25, 2022

Respectfully submitted,

PLAINTIFFS, G.K., et al.,

By their attorneys,

/s/ Michelle Wangerin, Esq.
**NEW HAMPSHIRE LEGAL ASSISTANCE**
Michelle Wangerin
N.H. Bar No. 17769
Kay E. Drought
N.H. Bar No. 12851
154 High Street
Portsmouth, NH 03801
P: (603) 431-7411
F: (603) 431-8025
mwangerin@nhla.org
kdrought@nhla.org

**AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE**
Gilles R. Bissonnette
N.H. Bar No. 265393
Henry R. Klementowicz
N.H. Bar No. 21177
18 Low Avenue
Concord, NH 03301
T: (603) 224-5591
gilles@aclu-nh.org
henry@aclu-nh.org

**DISABILITY RIGHTS CENTER-NH, INC.**
Pamela E. Phelan
N.H. Bar No. 10089
Sarah J. Jancarik
N.H. Bar No. 272310
Jennifer A. Eber
N.H. Bar No. 8775
64 North Main Street, Suite 2
Concord, NH 03301-4913
P: (603) 228-0432

4

F: (603) 225-2077
pamelap@drcnh.org
sarahj@drcnh.org
jennifere@drcnh.org

**CHILDREN'S RIGHTS, INC.**
Ira Lustbader
NY Bar No. 2516946
Nicole Taykhman
NY Bar No. 5522776
Kathleen Simon
NY Bar No. 5682810
88 Pine Street, 8th Floor
New York, NY 10005
P: (212) 683-2210
F: (212) 683-4015
ilustbader@childrensrights.org
ntaykhman@childrensrights.org
ksimon@childrensrights.org


**WEIL, GOTSHAL & MANGES LLP**
Konrad L. Cailteux
NY Bar No. 2056505
Katheryn Maldonado
NY Bar No. 5926027
Kathleen Stanaro
NY Bar No. 5900410
767 Fifth Avenue
New York, NY 10153
P: (212) 310-8000
F: (212) 310-8007
Konrad.Cailteux@weil.com
Katheryn.Maldonado@weil.com
Kathleen.Stanaro@weil.com