# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| _____ ) | |
| G.K, by their next friend, Katherine ) | |
| Cooper, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 1:21-cv-0004 (PB) |
| ) | |
| Christopher Sununu, in his official capacity ) | |
| as the Governor of New Hampshire, et al. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## DEFENDANTS' OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND DEADLINES

Defendants do not object to a stay of discovery until class certification is decided or to a short (e.g., 6-week) extension of discovery, either now or after a stay. However, Defendants oppose Plaintiffs' motion to extend discovery by a minimum of four months (with no assurance it will be Plaintiffs' last request) as well as Plaintiffs' belated attempt to extend the now-expired deadline to substitute class representatives.

Discovery in this case has been active for two years and has already been extended twice. *See* Doc. Nos. 120, 161. Recognizing the issues at stake, Defendants have largely produced the incredibly voluminous discovery Plaintiffs have sought. However, this has not come without significant time, expense, resources, and disruption to agency operations. Defendants' employees have already sat for 15 depositions lasting over 84 hours, including Rule 30(b)(6) depositions on dozens of subtopics which required the designation of 12 different witnesses. Defendants have responded fully to over 120 Requests for Production (RFPs), making nearly 375 rolling productions of "hard pull" documents that Defendants manually searched for and retrieved in

response to specific requests.  To collect and produce the "case files" of nearly 200 individual children, Defendants' employees had to physically retrieve paper files from eleven district offices, time the retrievals to ensure that caseworkers could still use the files to serve these children, manually disassemble the files, scan them in, organize them for production, reassemble them as they were kept, and re-deliver them to the caseworkers who use them.  Defendants cannot overstate the burden of that effort.  Nevertheless, Defendants had largely completed these and other hard pull productions by early 2023.  Defendants have now also collected and produced over 10,000 manually reviewed emails and an additional 160,000 predicted responsive emails from 16 agreed-upon custodians.  In total, Defendants have produced *over 300,000 documents, comprising over 2.4 million pages*.

Particularly in light of the significant burden discovery has already had on Defendants, Plaintiffs have not shown good cause for indiscriminately enlarging discovery for another four months or more.

*First*, Plaintiffs' motion implies they may seek *even more* discovery if the Court certifies a class in whole or part.  *See infra*.  However, a four-month extension (though far more time than needed) still does not ensure that any discovery period will remain after a decision on class certification.  By contrast, temporarily staying discovery would effectively bifurcate any remaining merits discovery until after a decision on class certification, provide Plaintiffs with any time needed to complete review of Defendants' documents, and permit more efficient resolution of any remaining discovery requests or disputes.

*Second*, Plaintiffs could have, with reasonable diligence, completed discovery in this case within the existing schedule.  Instead, Plaintiffs have unnecessarily prolonged discovery, including through an over-one-year-long process to agree to search terms and custodians for Defendants'

email productions, up to two years delay in asserting "deficiencies" in Defendants' productions, and a year-long pause in scheduling depositions.  Now, with just one month of discovery remaining, Plaintiffs are playing catch up, peppering Defendants with requests, pursuing stale alleged deficiencies, seeking to take a minimum of ten (10) additional depositions, and asking Defendants to increase the number of agreed-upon email custodians by nearly 70 percent.  Even assuming all of Plaintiffs' requests were relevant, proportional, and not unduly burdensome (which Defendants dispute), Plaintiffs have failed to show that they could not reasonably have pursued most if not all of this discovery long ago.  Plaintiffs cannot use their own delays or their eleventh-hour rush of demands as a sword to extend discovery further.

*Finally*, it would be prejudicial to grant Plaintiffs' footnote request to extend their now-expired deadline to substitute class representatives.  Plaintiffs have had ample time and discovery through which to identify substitute representatives if needed and have failed to indicate why they did not do so before the scheduled deadline.  Moreover, because Plaintiffs have markedly delayed or refused to produce discovery for the *existing* class representatives, Defendants are sure to be deprived of necessary discovery if Plaintiffs can further postpone substituting class representatives.  Finally, Plaintiffs have not briefed the propriety of extending indefinitely the substitution of class representatives after class certification and the issue is thus not properly before the Court.

## LEGAL STANDARD

Federal Rule of Civil Procedure 16(b) requires that a scheduling order limit the time for completing discovery and that such orders be modified only for "good cause."  The "good cause" standard ensures that a schedule may be modified only if the existing deadlines "cannot reasonably be met despite the diligence of the party seeking the extension."  Fed. R. Civ. P. 16(b) advisory

committee's note to the 1983 amendment; *see also O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004).  If the party seeking an extension "was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also O'Connell*, 357 F.3d at 155 ("Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment.").  The "good cause" standard also governs extensions of scheduling order deadlines to amend the pleadings. *O'Connell*, 357 F.3d at 155.  In assessing "good cause" courts may also consider prejudice to the opposing party. *Id.*

Courts may stay discovery under their inherent authority to manage the cases before them. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . .").  The broad language of Rule 26(b) likewise permits the Court to enter "any order which justice requires to protect a party . . . from annoyance . . . or undue burden or expense," including a stay of discovery.

## ARGUMENT

### I.    A Stay of Discovery Would Effectively Bifurcate Any Remaining Merits Discovery Until After a Decision on Class Certification and Limit the Scope of Any Remaining Discovery and Disputes

Plaintiffs have not committed that this will be their last extension request.  To the contrary, Plaintiffs argue that a four-month extension is needed because the Court's decision on class certification "likely will inform, and therefore affect the timing of, fact discovery completion." Doc. No. 252, ¶ 3(h).  This suggests Plaintiffs may seek even more discovery if class certification is granted in whole or part.

Defendants are mindful of Magistrate Judge Johnstone's concern that the Parties did not bifurcate discovery from the outset.  However, Defendants remain willing (as they proposed to Plaintiffs in April 2023 and again in mid-October 2023) to stay discovery until the Court issues a

decision on class certification, which would effectively bifurcate any remaining merits discovery. This would allow the parties to tailor such discovery to any issues actually in play after a class certification decision and, in turn, limit the time needed to complete discovery on those narrowed issues.

Plaintiffs also would not be prejudiced by a stay since Defendants are willing to complete pending, agreed-upon productions during the stay.  Indeed, a stay would provide Plaintiffs with any time they need to fully review Defendants' productions.  Finally, to the extent Plaintiffs oppose a stay because they prefer to litigate certain disputes between the parties, many of these disputes could be more effectively resolved after a decision on class certification, when the scope of the class (or lack thereof) will be apparent.

Had Plaintiffs agreed to a stay of discovery pending a decision on class certification when Defendants first proposed it in April 2023, Plaintiffs would have been assured months of discovery after a decision on class certification.  Although there is now little time left for discovery in the existing schedule, the Court could add a short extension (e.g., 6 weeks) to the end of a stay if the Court deems it appropriate.

## II.    Plaintiffs Could, With Reasonable Diligence, Have Completed Discovery Long Ago

In recent weeks, Plaintiffs have made a flurry of burdensome discovery demands on Defendants, nearly all of which could have been addressed long ago, are not tailored to the needs of the case, and/or are the result of Plaintiffs' own delays.[1]

By way of example, on October 30, Plaintiffs requested over 30 categories of

---

[1] Defendants recognize that the Court generally does not wish to delve into the parties' back-and-forth negotiations.  However, Plaintiffs have placed their own diligence squarely at issue in seeking an extension of discovery and assigning blame to Defendants for the need to do so.  As a result, Defendants address certain relevant negotiations herein.

documents identified in a contract that Defendants produced *almost two years ago* and about which Plaintiffs deposed 30(b)(6) representatives *more than a year ago*.  Plaintiffs also recently served new RFPs for documents they could have sought at the beginning of discovery, including RFPs about defenses included in Defendants' Answer.

Similarly, Plaintiffs substantially delayed production of Defendants' emails.  Plaintiffs served their first RFPs in November 2021, but did not propose search terms for email communications until nearly April of 2022.  Plaintiffs then initiated an exhaustive back-and-forth negotiation which, in addition to requiring repeated rounds of draft terms and hit reports, included a three-month period in which Plaintiffs paused to review sample documents identified using the draft terms and other weeks-long periods of silence from Plaintiffs.  All in all, it took until February 2023 to conclude negotiations on search terms and to reach agreement on the final 16 custodians.

Most recently, when the parties disagreed in July 2023 about the appropriate scope of the protective order governing Defendants' "predictively coded" emails, Plaintiffs refused to bifurcate the dispute to allow Defendants to produce over 150,000 emails while Plaintiffs reserved their right to challenge the issue post-production.  *See, e.g.*, Doc. No. 223-6 ¶ 19.  During the resulting negotiations Plaintiffs repeatedly delayed responding to Defendants, and then often responded only after Defendants' prompting.  *See, e.g.*, Doc. No. 223-1, at 4 (citing examples).  When the parties reached an impasse, Plaintiffs refused Defendants' multiple requests to seek the Court's guidance through an informal discovery conference, instead requiring Defendants to formally brief the matter and further delaying resolution and production.  *See id.* at 5 n.1.

Nor does Plaintiffs' desire to depose more witnesses or to add more email custodians

justify the requested extension.  Just last week, on November 9, 2023, Plaintiffs served Defendants with two (2) additional Rule 30(b)(6) deposition notices (covering 35 to 55 subtopics), eight (8) fact deposition notices, and a letter noting that they intend to notice still more depositions.  There is no justification for Plaintiffs waiting until a month prior to the close of discovery to pursue these depositions.  *See Brown v. Saint-Gobain Performance Plastics Corp.*, No. 16-CV-242-JL, 2022 WL 122609, at *1 (D.N.H. Jan. 7, 2022) ("[A]bsent unforeseen circumstances, discovery requests should be propounded well in advance of the discovery deadline, particularly if they raise complex legal or logistical issues.").  Simultaneously, Plaintiffs pressed Defendants to add 11 more email custodians.  But all of these individuals were known to Plaintiffs before the parties' February 2023 custodian compromise and Plaintiffs have given no justification for belatedly seeking to inflate the agreed-upon list of custodians.

Finally, Plaintiffs should not be permitted to use their own delayed response to Defendants' limited discovery requests (cited in their brief) as a sword to extend discovery.  *Contra* Doc. No. 252, ¶ 3(g).  Defendants served the relevant document requests in May 2022, and Plaintiffs informed Defendants on January 5, 2023, that they were not withholding any responsive documents.  Defendants did not learn until June 2023 that Plaintiffs did in fact have responsive documents in their possession, custody, or control, and the parties reached agreement in August on the scope of production.  While Plaintiffs have so far produced only *19 documents* from a single Named Plaintiff, and have declined to indicate when they will produce documents from the other two Named Plaintiffs with whom they have some contact, Plaintiffs cannot use that delay to extend the schedule in this case.

III.    **Plaintiffs' Request to Extend the Deadline for Class Representative Substitutions Would Prejudice Defendants**

Defendants object to Plaintiffs' request (buried in a footnote to their motion and not disclosed to Defendants during the parties' meet-and-confer process) to extend *nunc pro tunc* the now-expired deadline to substitute class representatives.

Plaintiffs argue that this extension is necessary because another Named Plaintiff will age out of DCYF custody in the coming months.  But Plaintiffs have known their clients' birthdates since before they filed this action, and Plaintiffs' have long known that three of their clients are no longer in DCYF custody.  Plaintiffs also cannot argue that they have not had sufficient discovery to identify additional class representatives.  Defendants began rolling productions of the detailed, unredacted case files of nearly 200 potential putative class members in November 2022.  And Plaintiffs have been aware for months that class certification, scheduled for argument on November 14, would not be decided before Plaintiffs' November 1 deadline to substitute class members.  Plaintiffs' lack of diligence in finding substitute class members (if they believe it necessary) should not be excused through an unwarranted extension.

In any event, Plaintiffs' own delays in producing discovery for the existing Named Plaintiffs (described above) shows that it would be prejudicial to further delay the deadline to substitute class representatives.  It has taken a year and a half since service of Defendants' RFPs, and over three months since the parties agreed on scope, for Plaintiffs to even *begin* rolling productions of documents for just one of the four Named Plaintiffs.  Plaintiffs have refused to provide any timeline for initiating productions for two other Named Plaintiffs, and Plaintiffs have indicated they will not produce any discovery at all for the fourth Named Plaintiff.  As a result, Plaintiffs' delays have made clear that at least four months (and probably

more) are needed between the identification of any class representative and the close of discovery and thus that it would be prejudicial to extend the deadline at all at this point.

Finally, it is inappropriate for Plaintiffs to request (in a footnote to a motion seeking an extension of discovery) that the Court permit Plaintiffs to substitute class representatives at some unspecified "later date," apparently after the close of discovery, "should the Court grant class certification but decline to apply the inherently-transitory exception." Doc. No. 252, at 4 n.2. The Court previously deferred a decision on whether the inherently transitory exception applies here because he determined that it raised complex questions of law that he need not resolve at that stage. Doc. No. 137 (Tr. 5:13-7:8). Plaintiffs cannot request an unfettered right to "cure" these legal complexities through a footnote without any further briefing.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' request to extend discovery by four months. Should the Court determine a stay or extension is appropriate, Defendants request that any extension be limited to 6 weeks; that the Court order that Plaintiffs will be granted no further extensions; and that the deadline to add class representatives not be extended.

Respectfully submitted,

CHRISTOPHER T. SUNUNU, in his official capacity as Governor of the State of New Hampshire, LORI WEAVER, in her official capacity as Commissioner of the New Hampshire Department of Health and Human Services, JEFFREY FLEISCHER, in his official capacity as Director of the Division for Children, Youth and Families, and HENRY LIPMAN, in his official capacity as Director of New Hampshire Medicaid Services,

By their attorney,

JOHN M. FORMELLA
NEW HAMPSHIRE ATTORNEY GENERAL

Dated: November 13, 2023

By: /s/ Nathan Kenison-Marvin
Nathan W. Kenison-Marvin, Bar No. 270162
Assistant Attorney General
Jennifer S. Ramsey, Bar No. 268964
Senior Assistant Attorney General
Michael P. DeGrandis, Bar No. 277332
Attorney
Office of the Attorney General (Civil Bureau)
New Hampshire Department of Justice
33 Capitol Street
Concord, NH 03301-6397
(603) 271-3650
nathan.w.kenison-marvin@doj.nh.gov
jennifer.s.ramsey@doj.nh.gov
Michael.p.degrandis@doj.nh.gov


/s/ Paige M. Jennings
Paige M. Jennings
Philip J. Peisch
Julia Siegenberg
Lara Rosenberg
Brown & Peisch PLLC
1225 19th St. NW, Suite 700
Washington, DC 20036
(202) 499-4258
pjennings@brownandpeisch.com
jsiegenberg@brownandpeisch.com

**CERTIFICATE OF SERVICE**

I, Paige Jennings, hereby certify that I caused a true and correct copy of the foregoing to be filed through the ECF system and served electronically on the registered participants as identified on the Notice of Electronic Filing.

November 13, 2023                                    /s/ Paige M. Jennings