1                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
2

3      *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
                                        *
4      G.K, BY THEIR NEXT FRIEND,       *
       KATHERINE COOPER, ET AL.,        *
5                                       * No. 1:21-cv-00004-PB
                      Plaintiffs.       * May 15, 2024
6                                       * 10:00 a.m.
                      v.                *
7                                       *
       CHRISTOPHER SUNUNU, IN HIS       *
8      OFFICIAL CAPACITY  AS THE        *
       GOVERNOR OF NEW HAMPSHIRE,       *
9      ET AL.                           *
                                        *
10                    Defendants.       *
                                        *
11     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

12              TRANSCRIPT OF STATUS CONFERENCE
                  HELD VIA VIDEOCONFERENCE
13           BEFORE THE HONORABLE PAUL J. BARBADORO

14     APPEARANCES:

15     For the Plaintiffs:     Michelle Wangerin, Esq.
                               Kay E. Drought, Esq.
16                             NH Legal Assistance

17                             Konrad Cailteux, Esq.
                               Weil Gotshal & Manges
18
                               Carolyn Hite, Esq.
19                             Madeleine MacNeil Kinney
                               Kathleen Simon, Esq.
20                             Rebecca Ritchin, Esq.
                               Ira Lustbader, Esq.
21                             Children's Rights - NY

22                             Jennifer A. Eber, Esq.
                               Disability Rights Center - NH
23
                               Henry Klementowicz,
24                             American Civil Liberties Union
                               of New Hampshire
25
                      (Appearances continued next page)

<u>For the Defendants</u>:    Philip Peisch, Esq.
Paige Jennings, Esq.
Brown & Peisch PLLC

Michael P. DeGrandis, Esq.
NH Attorney General's Office


<u>Court Reporter</u>:    Brenda K. Hancock, RMR, CRR
Official Court Reporter
United States District Court
55 Pleasant Street
Concord, NH 03301
(603) 225-1454

```
1                    P R O C E E D I N G S

2          THE CLERK:  Good morning, your Honor.  We're here in

3     the matter of G.K., et al. versus Governor of New Hampshire,

4     et al., 21-cv-4-PB, for a status conference

5          THE COURT:  All right.  Someone wanted to speak with

6     me.

7          MS. WANGERIN:  Yes, your Honor.  Thanks so much for

8     being willing to meet with us so quickly.  We filed a motion

9     for a status conference because, as you know, we have completed

10    mediation.  We also last -- I think we last spoke after the

11    class certification hearing when we were trying to figure out

12    the best path forward.  One of those paths was mediation, which

13    we attempted.

14         Another path forward that we had discussed at that

15    time was potential questions around -- I think that your Honor

16    had around some of the experts and some of the material that

17    had been produced following our motion for class certification,

18    particularly related to case planning, and then we also had

19    highlighted at that time that we had received substantial

20    amounts of other information in the meantime.

21         So, as the Court is aware, we filed a motion to

22    supplement our class certification expert declarations.  At the

23    same time, as the Court is aware, we also have this issue of

24    the named plaintiff that we recently added aging out of care

25    this summer.  And I'm not going to say the date, otherwise
```

1   we'll need to seal the record, but I think we're all aware of

2   what that date is, if we want to talk about it in specifics,

3   and I would just ask for sealing of the record.

4          So, with that background, we're trying to figure out

5   the best path forward, and we sort of see two potential paths

6   at this point in time.  One path forward would be to try to

7   resolve class certification prior to D.M. turning 18.  We

8   understand that that is a very ambitious path.  We think it is

9   a doable path, but it certainly would require tight deadlines

10  on both the parties and also would anticipate that the Court

11  thinks that it could rule on class certification by that date

12  in July, which we understand would be a potentially heavy lift

13  for Court.

14         We think that that path would prevent a number of

15  burdens on both parties, if we were to try to add a new named

16  plaintiff, which we have ready to go at this point.  It was a

17  younger-named plaintiff, and luckily this one would not age out

18  for a number of years.

19         But if we were to go that route, we would need to file

20  a motion for leave to add.  We would anticipate, because that

21  named plaintiff or that potential named plaintiff was not in

22  the class files already produced, we would need to request that

23  file and receive that.  We would anticipate needing to

24  supplement our expert declarations to demonstrate commonality

25  and typicality for a class certification, and then we would

1    anticipate some amount of discovery around that named

2    plaintiff.

3         So, the first path, which anticipates completing class

4    certification by the summer, would alleviate that burden.  At

5    the same time, if the Court does not see a path there, then we

6    would need -- because defendants at this point have disputed

7    that this is a transitory class, we would need to move forward

8    in filing a motion to supplement the new named plaintiff, and

9    we think that we would want to do that sooner than later.

10        And if that's the path we go down, then it may make

11   more sense to bundle all the discovery that would be

12   anticipated with that additional named plaintiff with that

13   process.  So, we would anticipate that we would file the motion

14   for leave to add the named plaintiff.  If that were granted,

15   then we could supplement those expert declarations, and then we

16   think it would be most efficient to do discovery of our

17   experts, bundling the D.M. discovery that defendants would need

18   with the discovery they would need on the new named plaintiff.

19   And so, that would, obviously, affect the timelines and how we

20   see the next few months progressing.

21        So, I think all of that to say we just wanted to raise

22   this issue with the Court.  What we're really trying to do here

23   is find a way forward to get to the merits of the case without

24   causing additional strain and burden on the parties and the

25   Court, and we're in this predicament right now, and so we just

1   wanted to raise the issue and see if there's a discussion

2   around it to be had.

3          THE COURT:  All right.  Mr. Peisch, what do you want

4   to say?

5          MS. JENNINGS:  Your Honor, this is Paige Jennings.

6   I'll be speaking for the defendants today.

7          THE COURT:  I apologize.  It's just Mr. Peisch has

8   always been the --

9          MS. JENNINGS:  No, your Honor --

10         THE COURT:  That's why I'm calling on him.  I'm happy

11  to call on you.  Thanks.  Go ahead.

12         MS. JENNINGS:  Absolutely.  And he may step in to be

13  clearer.

14         I want to step back and mention a couple of things.

15  One is, that we're going to be filing later this afternoon

16  opposition briefs to plaintiffs' motion to add new expert

17  reports and their motion to lift the stay, so some of what I'm

18  going to mention will be detailed more fully in those briefs.

19         But, stepping back, the defendants feel that we

20  entered mediation in December in good faith.  We spent several

21  months negotiating.  We believed the parties could reach

22  resolution.  And barely two weeks after we ended mediation we

23  were blind-sided by five new expert reports and 2,000 pages of

24  documents, and then also learned that there was another new

25  named plaintiff.  So, from our perspective, the plaintiffs are

1   trying to essentially start this case over and relitigate class

2   certification with new plaintiffs, new expert reports, new

3   theories, and we also note they're going to seek significant

4   new discovery.

5           So, you know, we have an overall concern not just with

6   the new plaintiff but with the amount of information that the

7   plaintiffs are seeking to file right now and with how that's

8   going to affect the case.

9           MS. WANGERIN:  Your Honor, we do recognize that there

10  is a significant amount of information.  One thing I will say

11  about that is that the records that were submitted as exhibits

12  or attachments to the expert filings were defendants' own

13  records, and we hoped that, by providing those with the expert

14  declarations, it would make it very clear both for defendants

15  and the Court what the experts were relying upon so that they

16  would have a clear road map and not have to go digging for

17  records.  So, we hoped that those filings would make everyone's

18  life easier, not more complicated.  Certainly, we could have

19  just submitted the expert declarations along with, you know,

20  those considered materials, but we had hoped that, by

21  highlighting exactly what they were relying on, it would make

22  this process easier, not harder.

23          THE COURT:  Well, I don't think that has worked.  I

24  have a couple of sources of frustration that I want to simply

25  express, and then we can move on from there.

1          Summary judgment motion -- excuse me -- class

2     certification motions were filed fully briefed.  We devoted a

3     huge amount of time.  I'm speaking not the royal "we," but my

4     law clerks and I devoted at that time substantial time to

5     preparing to decide the motion for class certification.  We

6     devoted substantial effort to do that to prepare for the

7     hearing.  We had the hearing; I was ready to go and decide the

8     motion.

9          I raised settlement discussions with you as a

10    possibility, which is something I do at every critical stage of

11    a proceeding like this, to try to help open the door for

12    settlement possibilities, if the parties are willing.  But I

13    don't expect the parties to follow a path like that, and I

14    almost always say, I can't remember whether I said that

15    specifically to the parties in this case, but I was, like,

16    Don't waste our time with fruitless settlement discussions if

17    you do not have a willingness to compromise.

18          Now, I do not know why these settlement discussions

19    failed.  I don't want to know.  But I expect with sophisticated

20    lawyers that you don't waste the Court's time like this,

21    because here's the problem:  I am now several months from that

22    oral argument.  Your case has fallen to the back of the line.

23    I'm working on several other very significant cases that have

24    acquired greater priority.

25          So, I wish that -- and the next time you're involved

1   in a case with me, I say this to all parties, in a case like

2   this, where there's an oral argument that occurs on a pending

3   motion and the parties want to stay a case for settlement, it

4   has real serious burdens on the Court when you ask for that

5   kind of a stay and you delay the resolution of the case, and

6   you should not do that unless you are extremely serious about

7   settlement discussions and are willing to compromise and you

8   see a realistic path to settlement, not just, Let's explore our

9   views for the first time.  I would have said, No, I'm going to

10   decide that motion; talk all you want, but I'm going to decide

11   that motion.  Okay?  So, that's the first thing that concerns

12   me.

13          The second thing that concerns me is that, and I know

14   how highly skilled all of you are, skilled lawyers should be

15   working towards focusing and simplifying the case, not making

16   it more complicated and convoluted.  This concerns me, that

17   we're not following this path.

18          This case is an old case.  I want to get it resolved.

19   I will resolve it.  But I don't want people to make the case

20   ever-increasingly complex, when we should be focusing on

21   drilling down on the essential issues in this case.  All right?

22          So, those are two concerns to me.

23          Now, that being said, I want the plaintiffs to

24   understand I am not going to let this class certification fail,

25   if it should be granted, because I wait to decide the class

1   certification motion until the existing named plaintiff has

2   aged out.  I'm not going to do that, okay?  I'm not going to

3   let that happen.  Even though you have imposed significant

4   burdens on me and my staff, I'm not going to let that happen.

5   All right?  So, I'm going to decide this certification motion,

6   if I need to, before that plaintiff ages out, because, if I

7   don't certify, then certification fails for that reason on the

8   merits; and, if I do certify, the fact that the plaintiff is no

9   longer in the class doesn't defeat class certification.  So,

10  I'm going to get that done.  All right?

11       Now, what I have to do to get it done I need to

12  explore with you because of this expert, supplemental expert

13  disclosure issue.  I have not -- again, your case has fallen to

14  the back of the line with me, so I'm working on other matters

15  now.  I have to get back and move -- delay those matters to

16  start focusing on your case.  I have not studied your expert --

17  your supplemental disclosure request, and I haven't yet seen

18  the defendants' objection to it, so I can't tell for certain

19  what it's all about.

20       But is it the case that the parties -- are the parties

21  going to be in agreement that I can resolve the issue about

22  supplementation on the papers once that is ripe?  And then the

23  second question I want to verify, I don't believe that --

24  there's either a motion to strike or a motion *in limine*, I

25  can't remember how it's captioned, to strike the plaintiffs'

1    experts, some of the plaintiffs' experts.  Am I remembering

2    that correctly?

3         MS. JENNINGS:  That's correct, your Honor.  There are

4    pending Daubert motions for the four experts.

5         THE COURT:  All right.  So, I will have to resolve

6    those to resolve the certification motion, and I just want to

7    know does everybody agree that I can resolve those Daubert

8    motions on the papers, and that there's no need for any

9    evidentiary hearing to resolve the motion?

10        So, I need to hear from plaintiff and defendant.  Do

11   you agree that the motions to strike the expert disclosure on

12   Rule 702 grounds, regardless of how I deal with the

13   supplementation, is not going to require an evidentiary

14   hearing?  Because, if I need an evidentiary hearing, I've got

15   to schedule that right away to be sure that I can resolve the

16   motions to strike, resolve the supplemental disclosure, and

17   rule on the class certification before the named plaintiff ages

18   out.  That's my goal, to do that.  All right?  So, it's going

19   to impose a substantial burden on me, but I'm going to do it,

20   because I certainly won't let my inability to reach something

21   defeat a potentially meritorious class certification.  It would

22   be inconceivable to me that I could let that happen, so I'm not

23   going to let it happen.

24        Now, in terms of identifying an additional plaintiff,

25   my reaction is do whatever you want to do on that.  I'm still

1    going to try to resolve the class certification motion prior to

2    that plaintiff aging out, but if you want to in a

3    belts-and-suspenders approach move to amend to add that

4    plaintiff, have at it, if that's what you think you need to do.

5         I really don't believe that the Supreme Court

6    precedence on class certification should be construed in such a

7    way as to say, Ah, gotcha, the named plaintiff ages out, so

8    we're done with the class.  That seems ridiculous to me, and I

9    would not be inclined to interpret any of those precedents in

10   that way, in any event.

11        But, look, I'm not going to stop you from -- if you

12   want to try to move to amend, that's a decision for you to

13   make.  I don't know what I can say to you other than you

14   decide.  I'm going to try to get to the class certification

15   motion.  My goal is to resolve it.  In order to do so, I've got

16   to resolve a series of Rule 702 motions.  I apparently now have

17   to resolve an objection to a motion to --

18        What did you do?  Did you just do a supplemental

19   disclosure, or did you file a motion to supplement?

20        MS. WANGERIN:  So, it was -- so we filed a motion for

21   leave to supplement and then had attached the supplemental

22   expert reports.

23        THE COURT:  Then, we'll get the defendants' objection

24   and your reply, and then we'll be ripe and ready to resolve

25   those.  So, you've given me -- if I just said, Go ahead, I'm

1    not going to stay anything, I'm going to issue my certification

2    order, I would have already ruled on that issue by now, and,

3    instead, giving you more time has just made things more

4    difficult, more complex, and I find that we are not heading in

5    the right direction, from my perspective, with respect to case

6    management in this case.

7         I state my frustration, but I'm clear about my

8    intentions.  My intentions are to do all this work and resolve

9    all -- all this added work that wouldn't have been necessary at

10   the time, and I'll still reach the class certification motion,

11   resolve it before the named plaintiff ages out, no matter what

12   it takes, even if it takes me issuing a short statement about

13   certification, to be followed by a lengthy -- and the last one

14   I did in <u>Fitzmorris</u> was, like, 70 pages long.  These things are

15   -- and I had to do two of them, one denying and then one

16   granting.  I'll do it, okay?  That's what I'm going to do.

17        So, having told you that, what is the plaintiffs'

18   position about where we should go from here?

19        MS. WANGERIN:  So, we would be fine with the Court

20   ruling on the papers on everything.  We don't necessarily see a

21   need for another hearing.  One of the things we had thought is

22   that in terms of discovery there are two potential paths

23   forward.  One would be to, you know, if defendants want to take

24   discovery on the experts, if the Court grants leave, for the

25   supplemental declarations.

1          THE COURT:  So, are these entirely new experts?

2          MS. WANGERIN:  No.  These are the exact same experts.

3     So --

4          THE COURT:  Wait, wait, wait.  Everyone here please

5     understand, I know it sounds awfully arrogant of me, and it's

6     hard when there's a Zoom call, but if you hear me starting to

7     talk, if you could just pause for a minute, because I need to

8     move -- I'll give you a chance to say whatever you want to say

9     on any subject for as long as you want to say it, but please be

10    patient with me, because, if I have a thought in my mind, I

11    wanted to say something or ask something, I basically can't

12    listen to you while I'm thinking the thought, so your talk to

13    me is not -- it doesn't really register with me.  All right?

14    So, just try to be patient with me.

15         Now say whatever it is you want to say.  Go ahead.

16         MS. WANGERIN:  So, our expert declarations are -- so

17    all of the experts that we submitted reports on are the same

18    experts that previously submitted reports.  So, one of the

19    issues that we're faced with, the commonality, typicality issue

20    of D.M., so we supplemented on DM's specific information to

21    demonstrate commonality and typicality.

22         The other part of the supplementation was to provide

23    the additional evidence on the drivers that are already before

24    the Court through the class certification briefing --

25         THE COURT:  I just raised my hand.  Can I assume that

1    there are -- we now established there are no new experts.  Are

2    there any new drivers that you're arguing?  I see someone

3    shaking their head yes and someone saying no.

4         The plaintiff doesn't think you're identifying any new

5    drivers that weren't identified in your prior pleadings.  Is

6    that fair?

7         MS. WANGERIN:  That's fair.

8         THE COURT:  Okay.  Ms. Jennings, were you saying you

9    think they are putting in new drivers?

10        MS. JENNINGS:  We believe the new experts' reports are

11   substantially different from the original reports, and that

12   they've introduced new theories, that they've essentially tried

13   to beef up the original expert reports, and various experts are

14   addressing topics they did not address previously.

15        THE COURT:  Well, that's a different question than the

16   one I was asking.  Beefing up can be beefing up with respect to

17   existing drivers, not adding new drivers.  That's what I was

18   trying to find out.

19        Look, I'll just look at the papers when you're all --

20   when everything's ripe, and I'll figure it out.  But,

21   obviously, at least it would seem obvious to me, to the extent

22   that after the Court has held the hearing on the Motion for

23   Summary Judgment, if a party was to come forward with wholly

24   new experts, that's an entirely different matter from only

25   asking for supplementation from your existing experts.

1      Second, to the extent someone is arguing entirely new

2  drivers that were not drivers initially, that would seem to be

3  a somewhat different matter.  And so, with respect to the need

4  for additional discovery, I would be surprised that we would

5  need additional discovery if the plaintiff is correct that, A,

6  we're not having any new experts, and, B, we're not having any

7  new drivers; we're just fleshing out, supplementing, adding

8  additional detail to the arguments we presented in our original

9  certification brief, which I understand that's the plaintiffs'

10  position, right?

11                    (Attorney Wangerin nodded)

12      THE COURT:  All right.  I'll assess that, and I'll

13  make my own judgment about that, but I can tell you the further

14  away you get from, Oh, we're just providing some additional

15  detail about arguments we've already developed previously, the

16  further you get from that the harder it's going to be to allow

17  supplementation and, potentially, the need for discovery.

18      But I guess, and I'll direct this to plaintiff, if

19  there is a need for discovery before I can rule, it won't be me

20  that prevents the class certification ruling from being ruled

21  on, it will be you, because I know the way the litigants move

22  here, which is at a glacial pace, and you can't -- once if I

23  allow you to do any additional discovery, then it's going to

24  blow its way into the summer.  All right?  Like, I can't do

25  your job and mine.  I can do my job within the time limits, but

1    I can't do your job and mine.  So, that issue is going to be

2    important.  If I decide to allow supplementation but then allow

3    additional discovery, I don't know how I could possibly resolve

4    the motions before the named plaintiff ages out.  Do you see

5    what my problem is?

6         So, let me ask you how should I resolve that problem?

7    Is it your position that maybe I should just, Okay, you don't

8    need the additional expert stuff, we want you to rule based on

9    what was in front of you at the time of the oral argument; or

10   is your position, No, this supplementation stuff is so

11   important to us, Judge, that, even if you say there's

12   additional discovery necessary, we need it, we want you to

13   entertain that additional expert stuff?  If that's what you're

14   saying, then I guess I'm not as confident that I'll be able to

15   resolve the case, not because of my inability to get the work

16   done, but because of your inability to get the work done.  Do

17   you see the problem?

18        MS. WANGERIN:  I do, your Honor.  We don't think that

19   additional discovery is necessary.  We think that our

20   supplementations are really limited to providing additional

21   proof that what has been provided since we filed class

22   certification on those original drivers, so really it's our

23   experts compiling the additional records that defendants have

24   produced between March, when we filed for class certification,

25   and November, when we had the class certification hearing and

1    nearly simultaneously received tens of thousands of ESI

2    documents.  So, really what this supplementation is, is the

3    expert synthesizing that information that we received during

4    those months to provide additional proof on those drivers.  We

5    don't think that that would necessitate discovery.  If

6    defendants want to do that, we would be fine, you know, either

7    with producing our experts for a hearing so that they could

8    cross-examine them and the Court could ask any questions of

9    them; we would also be willing to produce them for a deposition

10   and just submit those depositions to the Court.  But, because

11   it's just additional proof that the experts are bringing

12   forward to you on those original drivers, we don't understand

13   why additional discovery would be necessary, but, again, we

14   understand that's not defendants' position.

15         THE COURT:  All right.  I'll certainly hear from the

16   defendant, but I'm not in a position to address the merits of

17   do we need additional discovery or not.  I'll have to review

18   the papers first.

19         So, having said that, what would you want to say, if

20   anything, in response to what you've just heard?

21         MS. JENNINGS:  Your Honor, we will lay this out in our

22   papers, but I'll just preview that we obviously have a very

23   different take on what's been produced in terms of the five new

24   reports and what we would need in order to respond and would be

25   concerned about their being allowed and our not being able to

1    respond.  We do think your Honor could, could and should deny

2    class certification on the existing record without those new

3    supplements, and so we do not have an objection to your Honor

4    deciding this on the papers without the new supplemental

5    reports, and we do not believe that an evidentiary hearing is

6    necessary for that decision either.

7         THE COURT:  All right.  Well, here are my thoughts,

8    and I'll get your reactions:  I declared my intention to

9    resolve the class certification motion before the named

10   plaintiff ages out.  I can do that if I can get to work on the

11   class certification issues and the existing Rule 702 motions; I

12   could start working on that within a week or two.  I have a

13   very substantial and important decision that I'll be issuing

14   shortly, but that's taking a lot of my time, but, once I issue

15   that decision, I should be able to turn to the matters as a

16   priority in your case.

17        What seems like I should do is I should -- I and my

18   clerks should look carefully at the request to supplement and

19   all of the pleadings associated with that and make a decision

20   or at least reach an internal decision how do I want to resolve

21   those; does that entail, if I were to grant the motion, should

22   that entail an opportunity for some additional discovery?  And

23   if I concluded that I was inclined to grant those requests for

24   supplementation and also concluded that to do so should entitle

25   the defendant to some discovery and perhaps supplementation of

1    the defendants' own expert reports, then I would convene

2    another status conference with the parties and say, All right,

3    I think I am inclined to grant the request, but I think there's

4    also a need, out of fairness, to give the defendant an

5    opportunity to do supplementation of their own, and, if

6    necessary, to do some additional discovery of the matters that

7    are addressed in the supplementation.

8         To do that will make it virtually impossible for me to

9    certify the class before the end of the period available to me,

10    and therefore I'm placing the plaintiff on notice that, if you

11    want to pursue that, as you apparently do, then you, in all

12    likelihood, will need to get a new plaintiff who is not going

13    to age out.  But that's all on you.  I can't tell you what to

14    do or not to do.

15         What I can do is, I'm willing to on an expedited

16    basis, once the defendants' response to your motion to

17    supplement becomes ripe, I will assess that motion on an

18    expedited basis and reach a conclusion, even if it doesn't

19    immediately result in a written opinion, as to whether I'm

20    inclined to, A, grant it.  If I deny it, then I can just move

21    on to decide the case based on the record that existed before

22    you were attempting to supplement, in which case I'm confident

23    I can resolve the case before the named plaintiff ages out.

24         So, the first question I'd ask myself is am I prepared

25    to grant some or all of the supplementation; and then the

1    second question would be, if I do that, is there going to be a

2    need for some additional discovery?  And if I say yes to, in

3    whole or in part, supplementation and yes, in whole or in part,

4    to additional discovery, I'll set a new status conference, tell

5    the parties, even if I haven't issued a written decision, look,

6    this is what I'm going to do, and that gives you time, if

7    that's what you -- you could either tell me, We don't really

8    need it now, Judge, we don't want to add a new plaintiff, or

9    you can try to go forward and see if you can add a new

10   plaintiff.  They'll object to that, et cetera, et cetera.

11        I don't know what else I can do for you, given the

12   difficult position that you have put me in here by, A -- and

13   I'm saying "you" collectively as to this, not just the

14   plaintiff -- A, the fruitless settlement efforts that delayed

15   things for months, and, B, this late effort to supplement

16   expert disclosures on class certification after the argument

17   has already been held on the class certification motion.

18   That's a really unusual, difficult problem you've created for

19   me.

20        Now, I understand your position is, apparently because

21   you got new discovery, is that what happened, after the oral

22   argument on class certification that required you to do this

23   additional supplementation?

24        MS. WANGERIN:  Yes, your Honor.  All of the additional

25   information is either analysis of the case files that were not

1    complete -- that production was not completed until May, which

2    was after the class certification pleadings are filed, and then

3    the ESI that was produced in November.

4         THE COURT:  I was not involved in this part of the

5    litigation, it was being managed by the Magistrate Judge, but

6    the incredible inability of the defendants to have decent

7    records and produce materials in a timely fashion has been a

8    huge source of the delay in this case.  So, I'm not -- I'm just

9    extremely dissatisfied with the way that this litigation is

10   progressing.  That's just my view, okay?  I want the parties to

11   understand that, that this is has not proceeded the way I would

12   expect the case to proceed with the highly experienced lawyers

13   we have on both sides of this case.  Look, I'm sorry to do it,

14   but I feel real frustration here.  This has put me in a really

15   difficult spot.  I will deal with it, but I wanted you to -- I

16   wanted to express my frustration, and it's directed at

17   everybody here.

18        All right.  So, does that make sense to the plaintiff,

19   that I, on an expedited basis, as soon as it's ripe, assess the

20   motion to supplement, reach a conclusion on, A, am I inclined

21   to grant it, and, B, if so, do I think we need additional

22   discovery, and if I say, Yes, Yes, to that, then I'll schedule

23   a status conference; if I say, No, to either, then I still

24   believe -- I'm confident I can resolve the case?  Then I'll

25   turn to the <u>Daubert</u> motions and resolve those, and then see

1    what's left, and see whether I can certify, and I'll get that

2    all done -- I don't have the exact date in mind, but it's

3    sometime in July, isn't it, that the deadline is?

4         MS. WANGERIN:  That's right, your Honor.  And, again,

5    either we can seal this portion or we can --

6         THE COURT:  Well, I don't see the need to seal it.

7    There are lots of people who have birthdays in July.  That

8    isn't giving anything that is sufficiently problematic as to

9    seal anything.

10        MS. WANGERIN:  I just meant if you need the exact

11   date.

12        THE COURT:  Yeah.  No, I don't need that.  I have the

13   exact date; we have looked at it.  I just don't have it in

14   mind.  You don't have to say it.  Just, I know that I've got a

15   date in July by which I have to issue an order.  So, I have to

16   manage my own docket and all the other people that want me to

17   do things, and I have to get that done and make sure that

18   priorities are addressed in the right way, and I'll do it.

19        So, okay.  So, you're comfortable, plaintiffs'

20   comfortable.

21        Let me ask defendant.  Are you comfortable with me on

22   a priority basis assessing the motion to amend, once your

23   objection is filed, and then I'll ask myself am I going to

24   grant it?  If I'm not going to grant it, then we're just back

25   to, okay, I'll look at the record as it existed at the time of

1    the argument on the motion to certify, and I'll decide whether

2    it's valid or not.  If I decide to allow supplementation, then

3    I think, out of fairness, I have to decide whether I'm going to

4    let you do some additional discovery, maybe a supplemental

5    deposition of one or more of the experts, maybe you may need to

6    supplement your own disclosures to respond.  But I do fear

7    that, once we get into that, it's going to really pressure the

8    July deadline in ways that I just don't think I can -- I

9    couldn't possibly meet, because it's not all within my control.

10   It's you folks, and you folks don't do things quickly.

11          So, what's the defendants' position?

12          MS. JENNINGS:  Yes, your Honor.  You've anticipated

13   what we will be saying in our written papers, which is that we

14   do believe we would need substantial time for discovery.  That

15   said, we're comfortable with the process that you've laid out

16   of deciding what you would like to do on the supplementation

17   and then scheduling a status conference, and we can go from

18   there.

19          The only other thing I would preview for you is that

20   we will also be filing an opposition to plaintiffs' motion to

21   fully lift the stay and asking that discovery continue to be

22   stayed, given the incredible volume of discovery that's already

23   happened.  But that's a separate issue, and we'll flag it in

24   our papers for you.

25          THE COURT:  All right.  From here on out, though,

1    folks, we're going to be working on focusing, narrowing,

2    clarifying, not expanding, compounding, leaving mounds of

3    confusion.  That's not what happens in litigation management,

4    okay?  So, you've got my attention now, and I'm going to be

5    very attentive to all of you, and I'm going to force this case

6    into a path of resolution, okay?  I really appreciate the work

7    the Magistrate Judge has done on this, but I am done.  We are

8    on a path to resolution of this case one way or the other, and

9    you're going to have to deal with me directly on this, because

10   my patience for what has gone on in this case has come to an

11   end.  All right?

12          So, okay.  Well, I appreciate everything you said, and

13   I don't like to be critical of people who I like and respect,

14   but you need to hear that message from me, because it's time to

15   get focused, it's time to move this thing to the end stages,

16   and we're not going to have it linger for another five years,

17   okay?  It's just not acceptable to me, and I'm sure it's not

18   acceptable to you.  I'm not going to let it happen.  All right.

19          Okay.  Thank you for the information and your help,

20   and I will get back to you once we have had a chance to -- once

21   the defendant has responded, and certainly there's a time for a

22   reply, the plaintiff can file a reply, but I'll get working on

23   it once I get the defendants' response, and if I think there's

24   any danger of missing the class certification deadline I'll

25   convene another conference, let plaintiffs know, and then they

1    can do whatever they want to do, whatever it is they want to

2    do.  They would have a couple of options.  One would be to

3    forego the additional supplemental material, and the other

4    would be to press on to name a new plaintiff.  I think those

5    are the two options.

6           Okay.  Thanks for your help.  And, again, please don't

7    take this as anything other than, when a judge is concerned

8    about the direction in which a case is going, sometimes it's

9    necessary to express concerns, which is what I've tried to do

10   here.  It doesn't in any way diminish the respect I have for

11   everybody involved in this.  It's just a concern that I've got

12   to get this case on a path to resolution, which is going to be

13   a priority for me.

14          Okay.  Thank you.  That concludes the hearing.

15          MS. WANGERIN:  Thank you, your Honor.

16          MS. JENNINGS:  Thank you, your Honor.

17      (WHEREUPON, the proceedings adjourned at 10:40 a.m.)

18

19

20

21

22

23

24

25

1                           C E R T I F I C A T E

2

3

4          I, Brenda K. Hancock, RMR, CRR and Official Court

5    Reporter of the United States District Court, do hereby certify

6    that the foregoing transcript constitutes, to the best of my

7    knowledge, skill, ability and belief, a true and accurate

8    transcription of the within proceedings.

9

10

11

12

13   Date: ___5/17/24_____    /s/ Brenda K. Hancock
                                 Brenda K. Hancock, RMR, CRR
14                               Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25