UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**G.K., by their next friend,**
**Katherine Cooper et al.**

    v.                                     Case No. 21-cv-4-PB
                                                        Opinion No. 2024 DNH 062

**Christopher Sununu, Governor**
**of New Hampshire et al.**

## MEMORANDUM AND ORDER

Four juveniles filed a putative class action complaint against various state defendants, seeking to represent a class of adolescents with mental disabilities in the custody of the New Hampshire Division of Children, Youth, and Families (DCYF). Since filing the complaint, each of the four named plaintiffs have exited DCYF custody. The plaintiffs filed two separate motions to amend their complaint to add new named plaintiffs still within DCYF custody, which the defendants oppose. Because I conclude that the plaintiffs' motions are supported by good cause, I grant the plaintiffs leave to file their amended complaint.

### I. BACKGROUND

The plaintiffs filed their class action complaint in January 2021. Doc. 1. The named plaintiffs, T.L., C.I., R.K, and G.K., sought to represent a class of adolescents between 14 and 17 years old who suffer from certain mental

disabilities and are under the legal custody or protective supervision of DCYF. Id. at 7-8.

Between November 2021 and October 2022, three out of the four named plaintiffs exited DCYF custody. T.L. and R.K. were reunified with their parents, Doc. 100-2 at 4-5; Doc. 178-16 at 19-22, and C.I. "aged out" of DCYF custody upon turning 18 years-old, Doc. 100 at 2, see N.H. Rev. Stat. Ann. § 169-C:3, V, leaving G.K. as the only named plaintiff still within DCYF custody.

The defendants moved to dismiss the claims of the plaintiffs who were no longer in DCYF custody, arguing that their claims for injunctive relief were now moot. Doc. 99-1 at 1. See Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001) (noting that putative class actions "ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved"). The plaintiffs countered that, pursuant to the so-called "inherently transitory" exception to mootness, they could maintain their claims even after they exited DCYF custody. Doc. 109 at 2. See Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975). I denied the defendants' motion without prejudice after concluding that it was unnecessary to decide at that moment given that G.K. could still advance a live claim on behalf of the putative class. Doc. 137 at 12-13. See Sam M. ex rel. Elliott v. Chafee, 800 F. Supp. 2d 363, 372-373 (D.R.I.

2

2011). I further noted that any potential mootness issue could be avoided altogether if the plaintiffs were to obtain class certification before G.K. aged out of DCYF custody. Doc. 137 at 8. See Cruz, 252 F.3d at 533 (noting that a class action may proceed if "the named plaintiff's individual claim [becomes] moot <u>after</u> proper certification of a class") (citing Sosna v. Iowa, 419 U.S. 393, 400-401 (1975)).

The parties proceeded through discovery with the goal of completing the class certification process well before G.K. would age out of DCYF custody in January 2024. The discovery process, however, was significantly hindered by a variety of complications and delays, many of which stemmed from the defendants' inability to provide timely discovery. See Doc. 303 at 3-4 (detailing the discovery process and resulting delays). Consequently, in May 2023, the parties filed a joint motion to extend all deadlines by six months. Doc. 161 at 3. I granted the parties' motion, which established a November 1, 2023, deadline for the substitution of parties. Doc. 161-1 at 2.

The plaintiffs' motion for class certification became fully ripe in August 2023. I expressed my intent to rule on the plaintiffs' motion that Fall and scheduled a motion hearing in November. Doc. 257 at 6, 9. On November 1, 2023, the plaintiffs moved to extend the deadline for the substitution of proposed class representatives to March 1, 2024, or 30 days after the court issued an order on class certification, whichever came later. Doc. 252-1 at 2.

3

Before the court was able to rule on the plaintiffs' motion for an extension, the parties agreed to stay litigation as of November 17, 2023, to pursue mediation. Doc. 259.

In January 2024, while the stay was still in place, the plaintiffs filed a motion to amend their complaint to add a new named plaintiff, D.M. Doc. 265 at 2. The plaintiffs explained that, because G.K. would age out of DCYF custody later that month, they wished to add a new plaintiff to avoid the risk that the class claims would become moot. Id. I granted the plaintiffs' motion without prejudice to the defendants' right to state their objections in a motion for reconsideration, which I would consider de novo. February 2, 2024, Margin Order.

The parties were ultimately unable to reach a settlement agreement, and mediation came to a close on April 16, 2024. A few weeks later, the plaintiffs moved to supplement their motion for class certification with supplemental expert reports analyzing (1) D.M.'s ability to serve as a class representative and (2) additional evidence of the common practices allegedly driving the class harm. Doc. 277-1 at 1-2. I granted the plaintiffs' motion to supplement but provided the defendants with the opportunity to engage in additional discovery and submit supplemental briefs responding to the expert reports. Doc. 303 at 22-23 & n.5.

The defendants were given until August 1, 2024, to submit their supplemental briefing, thus rendering it impossible for me to resolve the plaintiffs' motion for class certification before D.M. aged out of DCYF custody in July 2024. Doc. 304 at 2; Doc. 287 at 19-20. Consequently, the plaintiffs filed a second motion to amend their complaint to add a new named plaintiff, B.D. Doc. 297. The defendants have opposed the plaintiffs' motion to add B.D. to the complaint and have moved for reconsideration of my decision to allow the addition of D.M. Doc. 305; Doc. 307.

## II.  STANDARD OF REVIEW[1]

"A motion for leave to file an amended complaint 'requires that a court examine the totality of the circumstances and exercise sound discretion in

---

[1]  The parties dispute the proper standard for evaluating the two motions to amend. The defendants contend that the plaintiffs' motions must satisfy the "good cause" standard of Rule 16(b) because they were filed after the November deadline for substituting parties. See O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154-155 (1st Cir. 2004) (noting that Rule 16(b) applies to motions to amend a complaint filed after the deadline set by the scheduling order). The plaintiffs contend that, because their motion to extend the November deadline remains pending, their motions to amend do not contravene any established deadlines and therefore should be evaluated under Rule 15(a)'s "freely given" standard. See U.S. ex rel. D'Agostino v. EV3, Inc., 802 F.3d 188, 194 (1st Cir. 2015) (noting that, where the court does not establish a deadline for amendments, "the gears of Rule 16(b) [are] not engaged" and Rule 15(a) controls). The plaintiffs maintain, however, that their motions should be granted even if evaluated under Rule 16(b). Because I conclude that the plaintiffs' motions satisfy "Rule 16(b)'s more stringent good cause standard," I assume without deciding that Rule 16(b) controls. D'Agastino, 802 F.3d at 192.

light of the pertinent balance of equitable considerations.'" Amyndas Pharm., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 37 (1st Cir. 2022) (quoting Quaker State Oil Refin. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1517 (1st Cir. 1989)). Motions to amend filed after the expiration of a deadline set forth in a scheduling order are evaluated under Rule 16(b), which requires the movant to demonstrate "good cause" for the late amendment. O'Connell, 357 F.3d at 154-155.

"The 'good cause' standard focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant." Miceli v. JetBlue Airways Corp., 914 F.3d 73, 86 (1st Cir. 2019). Although the presence of prejudice is relevant to the inquiry, the principal focus is on the diligence of the moving party. Somascan, Inc. v. Phillips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013). Thus, even in the absence of prejudice, a party's "indifference" may preclude leave to amend because "such conduct is incompatible with the showing of diligence necessary to establish good cause." O'Connell, 357 F.3d at 155 (cleaned up). In determining whether the moving party has demonstrated the requisite diligence, courts consider a variety of factors, including the length of the delay, Steir v. Girl Scouts of the U.S.A., 383 F.3d 7, 12 (1st Cir. 2004), the reason for the delay, O'Connell, 357 F.3d at 155, and when the movant knew or should have known of the need for an amendment, Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 327 (1st Cir.

2008). District courts enjoy broad discretion when determining whether an amendment is warranted under Rule 16(b). O'Connell, 357 F.3d at 154.

### III.  ANALYSIS

Although the two motions occupy slightly different procedural postures, the parties agree that they turn on substantially similar issues; namely, whether the plaintiffs' failure to amend their complaint prior to the November 2023 deadline demonstrates a lack of diligence or prejudices the defendants. The defendants argue that, because the plaintiffs have always known when the named plaintiffs would age out of DCYF custody, there is no reason that they could not have moved to amend their complaint prior to November 2023. The defendants further argue that the plaintiffs' late amendments prejudice the defendants by forcing them to engage in costly discovery and rushed briefing. The plaintiffs counter that they acted reasonably in waiting to name new plaintiffs until the need to do so became clear and that the defendants have not suffered significant prejudice as a result. I evaluate each of the motions in turn.

### A.   Motion to Add D.M.

The defendants' motion for reconsideration attacks the plaintiffs' motion to amend the complaint to add D.M. as a named plaintiff on two grounds. First, the defendants assert that the plaintiffs could, and should, have foreseen the need for an amendment prior to the November 2023

7

deadline given that they were aware that G.K. would age out of DCYF custody in January 2024. Second, the defendants argue that they have been prejudiced by the plaintiffs' late amendment because they were forced to engage in additional discovery and briefing as to D.M.'s ability to represent the class well after the motion for class certification became ripe. I evaluate the defendants' arguments for reconsideration de novo but find neither persuasive.

The defendants are certainly correct that the plaintiffs were aware that G.K. would age out of DCYF custody in January and that their claims risked becoming moot if certification was not granted by that time. But the defendants ignore the fact that, as of the November deadline for amendments, the plaintiffs had little reason to suspect that the class certification motion would still be pending in January. Because the risk of the plaintiffs' claims becoming moot was front of mind for both the court and the parties, the class certification briefing schedule was set with the explicit intent of ensuring that a decision on certification would be made prior to G.K.'s 18th birthday. Doc. 137 at 3-4. Even after those deadlines were extended, I expressed to the parties my intent to issue a decision on class certification before G.K. aged out of DCYF's custody. Doc. 257 at 4. The only reason that class certification was not decided prior to January was that the parties decided to pursue mediation. Thus, the plaintiffs could not have

8

reasonably foreseen the need to add a plaintiff prior until November 17, 2023, when the parties agreed to a stay. See Doe v. Commissioner, 344 F.R.D. 57, 64 (D.N.H. 2023) ("good cause is shown if new material facts emerge or are discovered in the case that could not reasonably have been discovered earlier.").

Nonetheless, far from being indifferent to the scheduling order's deadline or the potential that class certification proceedings could extend beyond January, the plaintiffs acted diligently by timely moving to extend the deadline for substituting class representatives. The plaintiffs' decision to move for an extension, rather than filing a not-yet-necessary motion to amend, was a reasonable one given the risk that a motion to amend would unnecessarily distract from the class certification process.

Moreover, the defendants are not substantially prejudiced by the addition of D.M. The defendants only claim of prejudice is that the amendment required them to engage in additional briefing and discovery. But such briefing and discovery would have been necessary regardless of when the plaintiffs sought amendment. See Kivett v. Flagstar Bank, 333 F.R.D. 500, 507 (N.D. Cal. 2019) (noting that additional discovery and briefing necessitated by the addition of a new class representative did not "show prejudice to [the defendant] because these are both actions that [the defendant] would have had to take had the [newly named parties] began the

9

action as plaintiffs"). In any event, because the defendants became aware of the amendment in February 2024, they have had ample time to investigate D.M.'s circumstances and ability to serve as a class representative.[2] Moreover, because D.M.'s claims are identical to those of the initial named plaintiffs, the addition of D.M. is unlikely to substantially alter the defendants' legal arguments or strategy. Cf. Steir, 383 F.3d at 12 (noting that motions to amend are disfavored where they necessitate a "major alteration in trial tactics and strategy") (quoting Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 52 (1st Cir. 1998)).

All told, the plaintiffs acted diligently and without causing substantial prejudice to the defendants. Accordingly, I decline to disturb my original order permitting the plaintiffs to amend their complaint to add D.M.

**B.     Motion to Add B.D.**

The defendants argue that the plaintiffs have not acted diligently by waiting until June to add B.D. to the complaint. In the defendants' view, because the plaintiffs knew that D.M. would age out of DCYF custody in July, they should have moved to add B.D. to the complaint sooner. The defendants further note that the potential addition of B.D. has required the defendants

---

[2]     Although discovery was stayed for mediation between November and April, most of the pertinent information could be found in D.M.'s case file, which was within the defendants' control at all times.

10

to engage in substantial briefing and discovery on an expedited basis, at significant cost to the defendants.

The defendants' arguments are unavailing for several reasons. First, despite the defendants' arguments to the contrary, it would not have been reasonable to expect the plaintiffs to add B.D. as a plaintiff prior to the November 2023 deadline. For the reasons I already explained, the need to add a plaintiff was not foreseeable at that time and the plaintiffs acted diligently by seeking an extension should the need arise.

Second, the plaintiffs acted diligently by moving to add B.D. as soon as it became clear that a new plaintiff was necessary. Once mediation came to a close, I made clear to the parties that I intended to rule on the motion for class certification prior to D.M. turning 18 in July 2024. See, e.g., Doc. 287 at 20-21. And, but for the plaintiffs' supplemental reports and the additional briefing that they necessitated, I would have done so.[3] Thus, the need to add a new plaintiff did not formally arise until May 2024, when I informed the

---

[3] I disagree with the defendants that the plaintiffs' late motion to supplement demonstrates a lack of diligence. As I explain more fully in my order granting that motion, supplementation was necessitated at least in part by the defendants' inability to produce timely discovery. See Doc. 303 at 16-17. Moreover, the plaintiffs were not dilatory in moving for supplementation, but rather submitted the motion less than two weeks after the close of mediation.

11

parties of my intent to grant the plaintiffs' motion to supplement. Doc. 302 at 3.

Once that need arose, the plaintiffs moved quickly. Having appropriately anticipated the possibility that their motion to supplement would preclude me from ruling on certification prior to D.M.'s 18th birthday, the plaintiffs made sure to identify a potential new plaintiff prior to moving for supplementation. Doc. 287 at 4. As a result, the plaintiffs were able to immediately disclose the identity of the new plaintiff and file a formal motion for leave to amend within a week of my ruling. Doc. 302 at 6, 14. The short time period between my decision on the motion to supplement and the plaintiffs' motion to amend supports their showing of good cause. Cf. Amyndas, 48 F.4th at 37 (considering "the reasonableness of the time between the filing of the motion for leave and a variety of points at which a party would become aware of a need to amend" in deciding whether a delay was justified).

Finally, the defendants will not be substantially prejudiced by the amendment. Like D.M., B.D.'s claims are materially identical to those of the initial named plaintiffs. Accordingly, it is unlikely that the defendants will need to substantially rework their opposition to class certification or broader theory of defense. But, to the extent they wish to contest B.D.'s suitability to

serve as a class representative, they have been provided with the opportunity to do so through additional discovery and briefing.

I have no doubt that, as the defendants note, meeting the expedited schedule for this additional briefing and discovery will require significant time, effort, and resources. But the tight timeframe for supplemental briefing is less a factor of the plaintiffs' late amendment than it is the advanced age and alarmingly slow pace of this case. The plaintiffs filed their complaint three-and-a-half years ago and their motion for class certification over a year ago. Yet, because of the significant delays caused by countless discovery disputes and an unusually prolonged attempt at mediation, the case remains in its preliminary stages without a decision on class certification. These delays have necessitated not only the addition of multiple new plaintiffs, but also an aggressive schedule to finally bring this case to resolution. Given that the defendants bear at least partial responsibility for these delays, they cannot now be heard to complain of prejudice caused by the expedited schedule.

For these reasons, I conclude that the plaintiffs have good cause to amend their complaint to add B.D. as a plaintiff and grant their motion.[4]

---

[4] In light of this conclusion, the plaintiffs' motion to supplement their expert reports with analysis of B.D.'s ability to serve as a class representative (Doc. 306) is granted. See Doc. 303 at 14 n.2 (explaining why such supplementation is warranted).

13

## IV.  CONCLUSION

For the foregoing reasons, the defendants' motion for reconsideration (Doc. 307) is denied. The plaintiffs' motion for leave to file a second amended complaint (Doc. 297) and motion for leave to supplement their expert declarations (Doc. 306) is granted. Within 48 hours counsel shall electronically refile the pleading attached to the motion to amend using the appropriate event in CMECF. In accordance with Judge Johnstone's May 20, 2024, order, the deadlines established in the court's May 3, 2023, scheduling order are vacated and will be revisited following a decision on class certification.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

July 29, 2024

cc:   Counsel of record