**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

G.K., et al.,

                Plaintiffs,

v.

                                            Case No. 21-CV-4-PB

CHRISTOPHER SUNUNU, et al.,

                Defendants.

**PLAINTIFFS' OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT I AS TO ALL PLAINTIFFS AND COUNTS II-V AS TO ALL PLAINTIFFS EXCEPT B.D.**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 4

ARGUMENT .................................................................................................................. 4

  I.    LEGAL STANDARD ......................................................................................... 4

  II.   NAMED PLAINTIFF B.D. HAS CONSTITUIONAL AND STATUTORY STANDING
AS TO ALL COUNTS (I-V) ...................................................................................... 6

    A.   As Defendants Admit, Named Plaintiff B.D. Has Constitutional and Statutory Standing
as to Counts II-V, so B.D.'s Claims Are Not Moot. ............................................... 6

    B.   Named Plaintiff B.D. Has Statutory Standing as to Count I Because AACWA Entitles
All Youth in Foster Care to Case planning. .......................................................... 6

  III.   NAMED PLAINTIFFS G.K., C.I., T.L., R.K., AND D.M. ALSO HAVE STANDING
AS TO ALL COUNTS (I-V) .................................................................................... 16

    A.   All Named Plaintiffs Have Statutory Standing as to All Counts .................................. 16

    B.   All Named Plaintiffs Have Constitutional Standing as to All Counts Because the Class
Is Inherently Transitory ....................................................................................... 17

CONCLUSION .............................................................................................................. 23

**CASES**

*Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44 (1st Cir. 2013) ............... 18

*B.H. v. Johnson,* 715 F.Supp. 1387 (N.D. Ill.1989)............................................................... 14

*Brian A. ex rel. Brooks v. Sundquist,* 149 F.Supp. 2d 941 (M.D. Tenn. 2000) ........................... 14

*Brian A. v. Sundquist,* 149 F. Supp. 2d 941 (M.D. Tenn. 2000)................................................ 9

*Brito v. Barr*, 395 F. Supp. 3d 135 (D. Mass. 2019).............................................................. 17

*Clark K. v. Guinn*, No. 2:06-CV-10689-RCJ-RJJ, 2007 WL 1435428 (D. Nev. May 14, 2007). 14

*Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991)............................................................ 20

*Cruz v. Farquharson*, 252 F.3d 530 (1st Cir. 2001) ............................................... 18, 19, 23

*D.C. by & through Cabelka v. Cnty. of San Diego*, 445 F.Supp. 3d 869 (S.D. Cal. 2020) .......... 14

*D.H.L. Assoc., Inc. v. O'Gorman*, 199 F.3d 50 (1st Cir.1999) .................................................. 4

*Dep't of Commerce v. New York*, 588 U.S. 752 (2019)............................................................ 4

*Doe v. Leavitt*, 552 F.3d 75 (1st Cir. 2009) ......................................................................... 11

*Elisa W. ex rel. Barricelli v. City of New York*, 15 CV 5273-LTS-HBP, 2016 WL 4750178
    (S.D.N.Y. Sept. 12, 2016).......................................................................................... 14

*Fed. Trade Comm'n v. Vantage Point Servs., LLC*, 266 F. Supp. 3d 648 (W.D.N.Y. 2017)....... 15

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000)
    .................................................................................................................... 4, 5

*G.K. by Cooper v. Sununu*, No. 21-cv-4-PB, 2021 WL 4122517 (D.N.H. Sept. 9, 2021) ..... 11, 14

*Gerstein v. Pugh*, 420 U.S. 103 (1975)........................................................................ 17, 20

*Harris v. University of Massachusetts Lowell*, 43 F.4th 187 (1st Cir. 2022) ........................ 18, 20

*Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012).................................................................. 9

*Holmes v. Pension Plan of Bethlehem Steel Corp.,*213 F.3d 124 (3d Cir.2000) ......................... 19

*In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018)....................................................... 4

*Jeanine B. by Blondis v. Thompson,* 877 F.Supp. 1268 (E.D. Wis. 1995) ................................. 14

*Jonathan R. by Dixon v. Justice*, 41 F.4th 316 (4th Cir. 2022)................................................ 19

*Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012) ............................................................... 5

*Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277 (N.D. Ga. 2003) .................................... 9, 14

*L.J. by & through Darr v. Massinga*, 838 F.2d 118 (4th Cir. 1988)......................................... 14

*L.J. v. Wilbon*, 633 F.3d 297 (4th Cir. 2011) ...................................................................... 14

*LaShawn A. v. Dixon*, 762 F.Supp. 959 (D.D.C. 1991) ......................................................... 14

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ............................................. 10

*Lynch v. Dukakis,* 719 F.2d 504 (1st Cir. 1983) .................................................................. 14

*Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003) .......................................................... 4

*Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229 (2010)................................ 12

*Olson v. Brown*, 594 F.3d 577 (7th Cir. 2010) .............................................................. 18, 19

*Powell v. McCormack*, 395 U.S. 486 (1969) ........................................................................ 4

*Ramirez v. Sanchez Ramos*, 438 F.3d 92 (1st Cir. 2006)......................................................... 5

*Sam M. ex rel. Elliott v. Chafee*, 800 F.Supp.2d 363 (D.R.I. 2011) ...................................... 6, 14

*Sosna v. Iowa*, 419 U.S. 393 (1975) ................................................................................. 17

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .................................................. 16

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) ......................................................... 5

*United States v. Catala*, 870 F.3d 6, (1st Cir. 2017)............................................................... 5

*United States v. W. T. Grant Co.*, 345 U.S. 629 (1953).......................................................... 4

*Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006)................................................................... 8

## STATUTES

42 U.S.C. § 622(b)(8)(A)(ii) ........................................................................ 8
42 U.S.C. § 671(a)(16) ............................................................................. 11
42 U.S.C. § 674(a)(3)(E) .......................................................................... 13
42 U.S.C. § 675(1) ..................................................................................... 8
42 U.S.C. § 675(1)(B) .............................................................................. 21
42 U.S.C. § 675(5) ..................................................................................... 8
42 U.S.C. § 622 ...................................................................................... 7, 8
42 U.S.C. § 672(a)(1) ............................................................................... 12
42 U.S.C. § 671(a)(16) ........................................................................... 7, 8
42 U.S.C. § 671(a)(22) ............................................................................... 7
42 U.S.C. § 672(k)(1) .............................................................................. 12
42 U.S.C. § 675(1) ..................................................................................... 8
42 U.S.C. § 675a ......................................................................................... 8
42 U.S.C. § 675a(c) ................................................................................. 12
U.S. Const. art. III, § 2, cl. 1 ..................................................................... 4

## RULES

N.H. R. Prof. Conduct 3.7(a)(1) .............................................................. 16

## REGULATIONS

45 C.F.R. § 1355.20 ................................................................................. 10
45 C.F.R. § 1355.34 ................................................................................. 10
45 C.F.R. § 1356.21(g)(2) ....................................................................... 21
45 C.F.R. § 1356.60(c) ............................................................................ 13

## INTRODUCTION

Defendants' Motion to Dismiss should be denied. Named Plaintiff B.D.'s claims are not moot, and B.D has constitutional and statutory standing on all claims. In addition, Defendants fail to demonstrate that the other Named Plaintiffs' claims are moot or that they lack standing to seek class-wide relief under the well-recognized inherently transitory exception.

## ARGUMENT

### I.   LEGAL STANDARD

Standing and mootness are distinct justiciability doctrines born from the Constitution's case-or-controversy limitation on federal court jurisdiction. *See* U.S. Const. art. III, § 2, cl. 1; *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180 (2000). Standing asks whether, at the time of filing the complaint, the plaintiffs "ha[d] suffered an injury in fact that is . . . fairly traceable to the challenged action of the defendant [and] . . . likely . . . will be redressed by a favorable decision." *Id.* at 180-81. To establish constitutional standing, at least one named plaintiff must possess "such a personal stake in the outcome of the controversy as to assure . . . concrete adverseness." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018). Mootness, on the other hand, asks whether "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *D.H.L. Assoc., Inc. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir.1999) (*quoting Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Plaintiffs must show that "at least one plaintiff [has] standing to sue," *Dep't of Commerce v. New York*, 588 U.S. 752, 766 (2019). Whereas Defendants, as the moving party, have the "heavy" burden of establishing mootness, *Mangual v. Rotger-Sabat*, 317 F.3d 45, 61 (1st Cir. 2003) (*quoting United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953)). As the Supreme Court has explained, "[s]tanding doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted

to those disputes in which the parties have a concrete stake. In contrast, by the time mootness is an issue, the case has been brought and litigated . . . [so that] abandon[ing] the case at an advanced stage may prove more wasteful than frugal." *Friends of the Earth, Inc.*, 528 U.S. at 191-92.

The mootness doctrine is "flexible," and Article III justiciability is "not a legal concept with a fixed content or susceptible of scientific verification." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400-01 (1980) (citations omitted). For this reason, when an individual pursues claims on behalf of a class of impacted individuals, courts recognize several exceptions to mootness, including one that applies here—the inherently transitory exception.[1] Plaintiffs have the burden of showing an exception to mootness applies. *See Ramirez v. Sanchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006).

"Statutory standing is a horse of a different hue. It relates to whether the plaintiff has a cause of action under a particular statute. Unlike Article III standing, though, the existence of statutory standing is not a prerequisite to a court's power to adjudicate a case." *United States v. Catala*, 870 F.3d 6, 9 (1st Cir. 2017). Constitutional standing and statutory standing are thus distinct inquiries. *Katz v. Pershing, LLC*, 672 F.3d 64, 75 (1st Cir. 2012). As applied to this case, statutory standing requires that at least one Named Plaintiff has an enforceable right to sue under each of the claims presented: Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and the Adoption Assistance and Child Welfare Act ("AACWA"). *See id*.

---

[1] Courts have referred to the exception interchangeably as the "relation back" exception or the inherently transitory exception. *See* Plfs.' Obj. and Mem. of Law to Defs.' Mot. To Dismiss at n.2, ECF No. 109. For purposes of this objection, Plaintiffs use inherently transitory.

## II.    NAMED PLAINTIFF B.D. HAS CONSTITUIONAL AND STATUTORY STANDING AS TO ALL COUNTS (I-V)

### A.  As Defendants Admit, Named Plaintiff B.D. Has Constitutional and Statutory Standing as to Counts II-V, so B.D.'s Claims Are Not Moot.

Defendants admit that Named Plaintiff B.D. has both constitutional and statutory standing to bring claims under the ADA and Section 504 (Counts II-V). Defs.' Mot. To Dismiss Count I as to All Pls. and Counts II-V as to All Pls. Except B.D. ("Defs.' Second Mot. to Dismiss"), ECF No. 318. Thus, B.D. can indisputably advance a live claim on behalf of the putative class as to Counts II-V. *See* Mem. and Order July 29, 2024, ECF No. 315; *see also Sam M. ex rel. Elliott v. Chafee*, 800 F.Supp.2d 363, 372-373 (D.R.I. 2011).[2] Therefore, "dismissal of the entire proposed class action on the ground of mootness does not arise." *Id.* at 372.

### B.  Named Plaintiff B.D. Has Statutory Standing as to Count I Because AACWA Entitles All Youth in Foster Care to Case Planning.

B.D. (as with all Plaintiffs) has statutory standing and adequately pleads a claim on behalf of the putative class under AACWA (Count I) because it entitles each child in foster care, including Named Plaintiff B.D., to initial and updated case plans. Thus, Defendants are wrong when they argue that they must have received partial federal reimbursement for foster care maintenance payments made on B.D.'s behalf, in order for B.D. to be "within the designated group who can sue for redress" under AACWA. Defs.' Second Mot. to Dismiss at 6. Furthermore, Defendants misstate Plaintiffs' AACWA claims, and ignore basic principles of

---

[2] *Sam M.* is informative on the point that even before class certification, dismissal of an entire proposed class action because a named plaintiffs' claims are moot is not warranted if claims for at least some named plaintiffs remain. 800 F.Supp. at 372. It is otherwise distinguishable from this matter because there the plaintiffs agreed to withdraw the claims of the named plaintiffs who had been adopted and "[had] repeatedly stated that they are prepared to seek leave to supplement the amended complaint by adding other plaintiffs to this action." *Id.* at 371-73. Additionally, the *Sam M.* court did not reach the inherently transitory argument. *Id.* at 373; *see* discussion *infra* Part B.

statutory construction, in asking this Court to set new precedent in the First Circuit and nationally that would promote absurd, untenable outcomes. The Court should reject Defendants' attempt to rewrite clear statutory language and a long-settled line of case law.

      *i.   Statutory Background*

Plaintiffs' case planning claims arise not only from 671(a)(16), but also from several interconnected provisions of AACWA. These interconnected provisions, including 42 U.S.C. §§ 622, 671(a)(16), 671(a)(22), and 675a, create an entitlement to case plans for all children in foster care, not only those receiving partial board-and-care matching. *See* Second Amended Complaint at ¶156, ECF No. 316.

In 1980, Congress comprehensively amended Title IV of the Social Security Act ("SSA"), including parts IV-B and IV-E, with the express aim of "improv[ing] the child welfare . . . programs." AACWA, PL 96–272 (HR 3434), PL 96–272, June 17, 1980, 94 Stat 500. Among AACWA's additions to the SSA, is to entitle, as a condition of a state receiving federal block-grant funding under Title IV-B, "*each child receiving foster care* under supervision of the State" to a "case review system." *Id.* § 103(a) (originally codified at 42 U.S.C. § 627 (1980) (later moved to 42 U.S.C. § 622(b)(8)(A)(ii)) (emphasis added). AACWA defines a "case review system," "[a]s used in this part [part E] *or part B of this title*," as "a procedure for assuring" that "each child has a case plan" and that "the extent of compliance with the case plan" is "reviewed . . . no less frequently than once every six months." *See id.* § 101(a)(1) (codified at 42 U.S.C. § 675(5) (1980)) (emphasis added); *see also id.* (defining a "case plan" as "a written document which includes [certain requirements]" (codified at 42 U.S.C. § 675(1) (1980))).

Over forty years later, AACWA's basic case planning entitlements have not changed. AACWA still entitles, across Titles IV-B and IV-E, "*each child receiving foster care*" to "a case review system (as defined in [42 U.S.C. § 675(5)] and in accordance with the requirements of

[42 U.S.C. § 675a])," 42 U.S.C. § 622(b)(8)(A)(ii) (2024) (emphasis added), in which a "case review system" is defined as "a procedure for assuring that . . . *each child has a case plan*" that is reviewed "every six months," 42 U.S.C. § 675(5) (emphasis added); *see also* 42 U.S.C. § 675(1) (defining the term "case plan").[3]

Accordingly, under the plain meeting of 42 U.S.C. §§ 622, 671(a)(16), 671(a)(22), 675(1), and 675a—which must be read together—AACWA requires that *all* children in foster care have case plans reflecting their current needs. *See generally Wachovia Bank v. Schmidt*, 546 U.S. 303, 304 (2006) (statutes pertaining to the same subject matter should be read together consistently as one system under *in pari materia*). Yet Defendants fail to even mention section 622's unambiguous and universal case planning entitlement, ignoring Title IV-B's central role in AACWA's case planning regime and Plaintiffs' well-pleaded allegations. *See* Second Amended Compl. ¶¶ 6, 156, 157, 159, 262 c(i), d(i) (AACWA claims arising under Titles IV-B (42 U.S.C. § 622) and IV-E (671(a)(16), 671(a)(22), 675(1), 675(5), and 675a)).[4]

---

[3] When Congress amended AACWA in 2014 to include "additional case plan and case review system requirements" and "empower[] foster children age 14 and older in the development of their own case plan and transition planning for a successful adulthood," it amended Title IV-B to explicitly include all such requirements. *See* Preventing Sex Trafficking And Strengthening Families Act, PL 113-183, September 29, 2014, 128 Stat 1919 § 111 ("Section 422(b)(8)(A)(ii) (42 U.S.C. 622(b)(8)(A)(ii)) is amended by inserting 'and in accordance with the requirements of section 475A' after 'section 475(5).'"); *see also* 42 U.S.C. §§ 675a(b) (case plan requirements for each child 14 years and older); *id.* § 675a(c) (case plan and case review requirements for each child placed in a QRTP. Doing so would not have been necessary if, as Defendants mistakenly suggests, section 622 did not entitle all foster children to case-planning.

[4] In addition to being read together to define the scope of the case plan obligations, like section 675, section 622's case-review mandate is privately enforceable under Section 1983 because it contains individualized, mandatory, rights-creating language; its commands are written in "clear and specific terms" and AACWA provides no alternative enforcement mechanism. *See* Mem. and Order on Mot. to Dismiss September 9, 2021 at 19-26, ECF No. 49; 42 U.S.C. § 622(b)(8)(A) ("In order to be eligible for payment under this subpart, a State *must* have a plan for child welfare services which" includes operation of "a case review system . . . for *each child* receiving foster care" (emphases added)) (citing *id.* § 675(5) (defining a case review system as "a procedure for assuring that . . . *each child has a case plan* . . . " (emphasis added)); *id.* § 675A

So, Defendants are wrong when they claim B.D. is not "within the designated group who can sue for redress," based on the language of only section 671(a)(16) (which requires "the development of a case plan . . . for each child receiving foster care maintenance payments under the State Plan"). *See* Defs.' Second Mot. to Dismiss at 6; 42 U.S.C. § 671(a)(16). Section 671 does not fundamentally re-write the universal case planning entitlement set forth in the *simultaneously-enacted* section 622. Instead, when read in conjunction with AACWA's universal case planning entitlement, section 671(a)(16) incorporates case planning as one criteria, *among others*, for separately claiming partial federal reimbursement. Put simply, Defendants' argument improperly relies on a single phrase from a single piece of AACWA's case planning regime, which divorces its statutory language from the statute as a whole.

 ii.   *Regulatory Support*

While the above statutory language shows that AACWA's case planning entitlement applies to all foster youth, consistent external sources further dispel any concerns about this interconnected reading of the Act.

For example, the U.S. Department of Health and Human Services ("HHS"), the federal agency charged with enforcing AACWA, long has required that states receiving federal funding under Titles IV-B and IV-E develop current case plans for all children in foster care. *See, e.g.*, ACF, HHS, *Title IV-E Foster Care Eligibility Reviews and the Child and Family Services State*

---

(further defining "case review system"); *see also Henry A. v. Willden*, 678 F.3d 991, 1006-09, 1009 n.10 (9th Cir. 2012) ("[a]dditional evidence of Congress's intent to create an enforceable right can be found at 42 U.S.C. § 622(b)(8)(A)(ii), which requires each State to assure that it is 'operating' a case review system 'for each child receiving foster care under the supervision of the State.'"); *Brian A. v. Sundquist,* 149 F. Supp. 2d 941, 946-49 (M.D. Tenn. 2000) (finding private right of action to case plans because "foster children such as the Plaintiffs are the intended beneficiaries of Sections 622, 671 and 675"); *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 291-92 (N.D. Ga. 2003) (finding private right of action under AACWA, citing 622(b)(10)(B)(ii)).

*Plan Reviews*, 65 Fed. Reg. 4020, 4057 (Jan. 25, 2000) ("We use the term 'case plan' to refer to

a plan developed to meet the statutory requirements of [42 U.S.C. §§ 622(b)(8)(A)(ii),

471(a)(16), 475(1) and 475(5)(A)]."); 45 C.F.R. § 1355.20 ("[As used in Titles IV-B and IV-E,

f]oster care means 24-hour substitute care for children placed away from their parents or

guardians and for whom the title IV-E agency has placement and care responsibility. . .

*regardless of whether . . . there is Federal matching of any payments that are made*.") (emphasis

added)); 45 C.F.R. § 1355.34 ("ACF will determine a title IV-E agency's substantial conformity

with title IV-B and title IV-E plan requirements based on" whether it has "procedures in place

that . . . [p]rovide, for each child, a written case plan" and "periodic review . . . no less frequently

than once every six months" (citing 42 U.S.C. §§ 622(b)(8)(A)(ii), 671(a)(16), 675(5)(A))).

> In 2012, HHS confirmed that states must abide by case planning requirements for all

children in foster care:

> All children in foster care—whether Title IV-E eligible or not—must receive case
> planning and review services (primarily caseworker activities on a child's behalf)
> . . . According to HHS, to be approved to receive Title IV-E funding a state must
> also operate a program under Title IVB, Subpart 1 of the Social Security Act. Under
> that subpart (which is also known as the Stephanie Tubbs Jones Child Welfare
> Services Program), **states are required to provide case planning and review
> services to *any* child in foster care whether or not that child is eligible for Title
> IV-E assistance.**

Congressional Research Service, Child Welfare: A Detailed Overview of Program Eligibility and

Funding for Foster Care, Adoption Assistance and Kinship Guardianship Assistance under Title

IV-E of the Social Security Act at 28 & n.65 (Oct. 2012),

https://crsreports.congress.gov/product/pdf/R/R42792/6 (emphasis added).[5]

---

[5] Courts may look to agency interpretations of statutes as persuasive and instructive in
conducting independent interpretations of statutory language. *See Loper Bright Enterprises v.
Raimondo*, 144 S. Ct. 2244, 2262 (2024) ("[C]ourts may—as they have from the start—seek aid
from the interpretations of those responsible for implementing particular statutes. Such

###### iii.   New Hampshire's State Plan

Defendants' own State Plan also supports interpreting the federal statutory entitlement to a case plan to apply to all children in foster care. As explained above, in order for Defendants to be eligible for federal funds for its foster care system, it must have a state plan approved by the federal government which "provides for the development of a case plan (as defined in section 675(1) of this title and in accordance with the requirements of section 675a of this title) for *each child* receiving foster care maintenance payments *under the State plan* and provides for a case review system which meets the requirements described in sections 675(5) and 675a of this title with respect to each such child." 42 U.S.C. § 671(a)(16) (emphases added); *see G.K. by Cooper v. Sununu*, No. 21-cv-4-PB, 2021 WL 4122517, at *9 (D.N.H. Sept. 9, 2021) (finding a private right of action for case planning provisions for "each child" in foster care).

New Hampshire's State Plan does not limit discussion of case planning requirements to children for whom the state receives partial federal reimbursement for foster care maintenance payments. *See* ECF No. 317-23, Ex. 12C. Instead, the State Plan provides that: "To meet the case plan requirements of [AACWA], the State . . . has promulgated policy materials and instructions for use by State . . . and local agency staff to determine the appropriateness of and necessity for the foster care placement of the child." *Id.* And New Hampshire's own case plan form 1550 provides for an unqualified case plan for *all* foster children, including updates every six months, citing AACWA as the federal source. *See* DCYF Policy 1550 Case Plans.

---

interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA." (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see also Doe v. Leavitt*, 552 F.3d 75, 79-80 (1st Cir. 2009) (deferring, under *Skidmore*, to an informal agency interpretation contained within a manual).

      iv.    *Defendants' Incorrect Interpretation of AACWA and Partial Federal Reimbursement for Foster Care Maintenance Payments Would Produce Absurd Results.*

Finally, Defendants' attempts to re-write AACWA's case planning entitlements would produce absurd results. *See generally [Milavetz, Gallop & Milavetz, P.A. v. United States](), 559 U.S. 229, 252 (2010)* (to the extent a statute is ambiguous, courts must construe statutes to avoid absurd results). There are many absurd results that could occur under Defendants' reading of AACWA. One such result is the absurdity of AACWA eligibility turning on acts exclusively within Defendants' own control. For example, partial federal board-and-care matching is available only if certain criteria are met by the State, including whether: Defendants completed a technical process of determining whether the family would have been eligible for AFDC; Defendants properly documented certain one-time best-interests determinations; the child was placed, by Defendants, in a licensed foster home or child-care institution; and, if the child was in a congregate setting, Defendants ensured the child underwent a CAT recommending such placement. *See* [42 U.S.C. §§ 672(a)(1), (2); 672(k)(1)](), [675a(c)](). But as the record shows, Defendants have performed badly in these areas:

> New Hampshire is leaving federal IV-E funds on the table, largely due to process and technology gaps . . . . Over the past three years, 27% of eligible IV-E foster care placements were collecting IV-E funding, compared to the average 41% of neighboring New England states. Of the top five reasons for IV-E ineligibility, four of those were process related, and one systems related: 1. Failure to Provide Financial Data, 2. Unable to Capture Wage Data, 3. Systems Did Not Interface Accurately, 3. Imminent Risk/Reasonable Efforts, 5. Contrary to the Welfare.

*See* [ECF 279-17]().[6] Thus, it would be absurd for AACWA eligibility to turning on acts exclusively within Defendants' own control. Additionally, Defendants can choose which, among the many

---

[6] *See also, e.g.*, [ECF 279-21]() *Emails Among Elizabeth Lafontaine, Fin. Manager, DCYF, Kerrin Rounds, DHHS Chief Fin. Officer, DHHS, et al., re: DCYF Fiscal Specialist Unit* (Mar. 1, 2021) [DHHS-2000473 at DHHS-2000473-74] (Ex. 21) (listing hundreds of outstanding tasks related to claiming federal funds going back to 2019 and explaining that "[n]ew hires are processing

different sources of federal matching available under the SSA, to claim. Under Defendants'

argument, their affirmative choice to claim, for example, Supplemental Security Income ("SSI")

over Title IV-E board-and-care matching would deny a child the right to a case plan under

AACWA.[7] This result would also be absurd.

Defendants' interpretation of AACWA would also lead to the absurd result of requiring

states to continually track each child's eligibility for, and the state's actual receipt of, specific

partial federal matching, and somehow retroactively provide case planning only for those points

in time—an interpretation plainly at odds with AACWA's other requirements to create initial

plans within 60 calendar days and to update plans every six (6) months. And, if Defendants do

not decide to claim reimbursement until long after a child has entered the system, this would

leave each child's right to a case plan uncertain until Defendants choose to claim (or not to

---

redeterminations and finding files that just have documents shoved in them and pieces of
processes were never completed or tracked, such as IV-E determinations"; observing that "[n]o
wonder our [IV-E] penetration rate is so low compared to other states"); Ex. 1 (*Letter from U.S.
HHS to NH HHS* (2017) [DHHS-1725546]) (informing New Hampshire that during federal audit
ACF was unable to obtain a complete listing of foster care participants, the listed total
participants differed from the amount reported on the state-generated Form CB-496, ACF was
unable to reconcile the difference, and finding "significant deficiency").

[7] For example, because board-and-care matching is a function of Social Security, a state may not
claim overlapping matching payments. States therefore may choose, unilaterally, to forego
board-and-care matching for an individual youth and to instead draw down that child's SSI
and/or Social Security Disability Insurance ("SSDI") survivor benefits. *See* Ex. 2 (DCYF, NH
DHHS, Family Services Children's Eligibility Manual § 820 (Oct. 2018) [DHHS-152471 at
152485-86]). In such cases, Defendants may continue claiming administrative-costs matching
for, among other things, case-planning activities, even though they are not claiming board-and-
care matching. *See* 42 U.S.C. § 674(a)(3)(E); 45 C.F.R. § 1356.60(c); DCYF Policy 2652(II)(D)
(2021). Setting aside the dubious ethics of liquidating a child's SSI/SSDI account, Defendants
offer no explanation as to why, under their proposed statutory interpretation, a bureaucrat's
choosing one funding source over another should justify stripping a child of an entitlement
deemed by Congress essential to their health and well-being. Notably, ██████████████
██████████████████████ *See* Ex. 3 ([DHHS-2249409-11]).

claim, let alone receive) partial federal reimbursement.[8] But the federal government does not require this approach because all children in foster care are entitled to case plans.[9]

Not surprisingly, Defendants fail to cite any federal court decision finding that the case planning entitlement is tied in any manner to whether a state claims or receives partial federal board-and-care matching for a specific child. None of the considerable number of cases finding a private right of action include any such qualification. *See, e.g.*, *Lynch v. Dukakis,* 719 F.2d 504, 512 (1st Cir. 1983); *G.K. by Cooper v. Sununu*, No. 21-cv-4-PB, 2021 WL 4122517, at *9 (D.N.H. Sept. 9, 2021); *Connor B. ex rel. Vigurs v. Patrick,* 771 F.Supp.2d 142, 170-72 (D. Mass. 2011); *Sam M.*, 800 F.Supp.2d at 386–88.[10]

     v.   *Defendants' Failure to Provide Any Discovery on Actual Receipt of Foster Care Maintenance Payments Under Title IV-E*

As set forth above, an individual's eligibility and partial reimbursement are irrelevant to the scope of the AACWA private right to case planning. However, in response to the Court's order that Plaintiffs address "whether any of the named plaintiffs receive [foster care maintenance payments under Title IV-E]," Procedural Order of June 14, 2024 at 2-3, ECF No. 304, Plaintiffs

---

[8] *See* DCYF Policy 2652, Title IV-E Claiming ("Title IV-E administrative claims must be submitted to the ACF within 2 years after the calendar quarter in which the Division as the Title IV-E agency made the expenditure.").

[9] Adding to the absurd results of Defendants incorrect interpretation, the same child in foster care can be eligible for board-and-care matching at one point and ineligible during another. *See, e.g.*, Ex. 1 to Defs.' Second Mot. to Dismiss, ECF No. 318-2, ¶ 5(c) (Plaintiffs dispute the admissibility of this declaration but offer Defendants' own admissions against them).

[10] *See also L.J. by & through Darr v. Massinga,* 838 F.2d 118, 123 (4th Cir. 1988); *L.J. v. Wilbon*, 633 F.3d 297, 307-10 (4th Cir. 2011); *D.C. by & through Cabelka v. Cnty. of San Diego*, 445 F.Supp. 3d 869, 886 (S.D. Cal. 2020); *Elisa W. ex rel. Barricelli v. City of New York*, 15 CV 5273-LTS-HBP, 2016 WL 4750178, at *5-7 (S.D.N.Y. Sept. 12, 2016); *Clark K. v. Guinn*, No. 2:06-CV-10689-RCJ-RJJ, 2007 WL 1435428, at *10-12 (D. Nev. May 14, 2007); *Kenny A.*, 218 F.R.D. at 292–93; *Brian A. ex rel. Brooks v. Sundquist,* 149 F.Supp. 2d 941, 946-49 (M.D. Tenn. 2000); *Jeanine B. by Blondis v. Thompson,* 877 F.Supp. 1268, 1282-84 (E.D. Wis. 1995); *LaShawn A. v. Dixon*, 762 F.Supp. 959, 973-74 (D.D.C. 1991); *B.H. v. Johnson,* 715 F.Supp. 1387, 1402 (N.D. Ill.1989).

requested discovery from Defendants on this issue. Ex. 4 (*Ltr. from M. Wangerin to P. Jennings* (July 3, 2024)). Because, as explained above, an individual child's "receipt" of such monies depends on several factors *exclusively* within Defendants' discretion and control, and can change over time, Plaintiffs requested not only information on whether Defendant actually claimed federal reimbursement for a given youth, but also tailored information on Defendants' efforts to gather the various information necessary for them to make such claims. *Id*. Defendants refused to produce any information, asserting that discovery in this matter was stayed. *See* Ex. 5 (*Emails between P. Jennings and M. Wangerin* (July 24, 2024)).

Defendants now rely on a declaration signed by one of their attorneys to assert that Defendants never have claimed IV-E reimbursement for B.D. *See* Ex. 1 to Defs.' Second Mot. to Dismiss. This is improper for several reasons. First, Attorney Rosenberg's declaration is *not* made on personal knowledge and instead relies on hearsay. *See id.* at 5 ("The following is based on information provided from the [DHHS], Office of Finance staff . . . ."). It therefore is inadmissible. Fed. R. Evid. 602, 801; *cf.* Fed. Trade Comm'n v. Vantage Point Servs., LLC, 266 F. Supp. 3d 648, 654 (W.D.N.Y. 2017) ("An attorney's affidavit or declaration not based on personal knowledge carries no weight."). Second, Attorney Rosenberg's declaration is unhelpful because it does not address whether B.D. was *eligible* for such reimbursement—████████████████ ████████████████████, *see* Ex. 3, and so Defendants may well have decided, for reasons unrelated to B.D.'s *statutory eligibility*, to forego claiming IV-E reimbursement. Finally, given that Defendants refused to provide Plaintiffs with *any* discovery on this issue, and that B.D.'s receipt of—nonetheless eligibility for—IV-E reimbursement remains very much in dispute, the declaration places Attorney Rosenberg in the untenable position of an advocate-

witness. *See* N.H. R. Prof. Conduct 3.7(a)(1). Attorney Rosenberg's declaration should be stricken from the record or at a minimum given no weight.

Given the absence of any proper factual support for the Defendants' assertion that they never claimed IV-E reimbursement for B.D., combined with their failure to produce any requested discovery, the Court should assume, for class certification and to the extent it impacts standing (though it should not) that B.D. is eligible for federal reimbursement for their foster care maintenance payments.

For all the reasons discussed above, B.D. has statutory standing under AACWA, and the Court should deny Defendants' motion to dismiss Plaintiffs' AACWA claim on this ground.[11]

## III.   NAMED PLAINTIFFS G.K., C.I., T.L., R.K., AND D.M. ALSO HAVE STANDING AS TO ALL COUNTS (I-V)

### A.  All Named Plaintiffs Have Statutory Standing as to All Counts

As Defendants concede, G.K., T.L., and D.M. have statutory standing to pursue claims under AACWA. For the reasons discussed above, each of the remaining Named Plaintiffs, C.I. and R.K., also has statutory standing to sue for redress under AACWA because an individual foster child's eligibility for foster care maintenance payments, and Defendants' actual receipt of

---

[11] Defendants do not contest B.D.'s *constitutional* standing as to their case planning claim (nor could they, given B.D. has suffered, and continues to suffer, the concrete injury of not receiving case planning). Instead, they challenge only B.D.'s statutory standing as to AACWA. Statutory standing, as noted above, does not impact this Court's *jurisdiction* to hear B.D.'s case planning claims and instead is an inquiry into the scope of the AACWA private right of action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998). Therefore, to the extent the Court has questions about the import of federal-board-and-care-matching eligibility, Plaintiffs request, in the alternative, that the Court deny Defendants' motion (properly understood as raised under Rule 12(b)(6), *see Katz*, 672 F.3d at 75-76) without prejudice, so that Plaintiffs are afforded a full and fair opportunity to seek discovery on this issue, *see supra* section (II)(b)(*v*). Doing so would not prejudice Defendants, resolution of class certification, or completion of discovery, given that Plaintiffs independently challenge Defendants' deficient case planning practices as a driver of their *Olmstead* claim. *See* Pls.' Class Cert. Reply at 12.

partial reimbursement for some costs of care, are irrelevant to AACWA case planning entitlements. Defendants do not contest G.K.'s, T.L.'s, D.M.'s, C.I.'s, and R.K.'s statutory standing to pursue claims under the ADA and Section 504.

### B. All Named Plaintiffs Have Constitutional Standing as to All Counts Because the Class Is Inherently Transitory

Defendants' motion should be denied because, as discussed above, at least one Named Plaintiff, B.D., has constitutional and statutory standing as to all counts. *See* Ex. 6, Transcript of December 14, 2022, Status Conference at 8:2-7. ("I could simply deny the motion to dismiss without prejudice to the defendants right to renew it at any point in which the defendants are able to claim that *all the named plaintiffs' claims have become moot*.") (emphasis added).

Additionally, all Named Plaintiff claims may proceed under the inherently transitory exception to mootness. As previously briefed in Plaintiffs' Objection and Surreply to Defendants' Motion to Dismiss C.I. and T.L., which Plaintiffs fully incorporate herein, ECF Nos. 109 and 117, when an "issue sought to be litigated escapes full appellate review at the behest of any single challenger, [it] does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs." *Sosna v. Iowa*, 419 U.S. 393, 401–02 (1975). A court may certify a class after the named plaintiffs' claims become moot where "it is certain that other persons similarly situated will continue to be subject to the challenged conduct and the claims raised are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Brito v. Barr*, 395 F. Supp. 3d 135, 146 (D. Mass. 2019), *modified*, 415 F. Supp. 3d 258 (D. Mass. 2019); *see also Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975).

      *i.*     *Inherently Transitory Doctrine applies, not the Capable of Repetition Yet Evading Review Exception*

Defendants claim that the First Circuit's decision in *Cruz* bars application of the inherently transitory exception to this case. Defs.' Second Motion to Dismiss at 6. Defendants are wrong. Their reliance on *Cruz* is misplaced because that decision analyzed a different mootness exception, and thus it is inapposite. *See id.*

As Plaintiffs explained in prior briefing, *see* Plfs.' Obj. to Defs.' Mot. to Dismiss at 10, in *Cruz* the First Circuit analyzed the "capable of repetition yet evading review" exception to mootness. *See Cruz v. Farquharson, 252 F.3d 530 (1st Cir. 2001)*. While this is not the proper exception in this case, it is notable that Defendants mischaracterize this standard. They argue that the Named Plaintiffs claims do not meet that standard because there is "not a realistic threat that no trial court ever will have enough time to decide the underlying issues (or, at least, to grant a motion for class certification)." Defs.' Second Mot. to Dismiss at 9. *Cruz*, however, states that the named plaintiffs would have to show "that the claims are inherently transitory, <u>or</u> that there is a realistic threat…" *Cruz*, 252 F.3d at 535 (emphasis added) (internal citation omitted). This reading is supported by the First Circuit's analysis in *Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 57 (1st Cir. 2013), where the First Circuit—applying the capable of repetition yet evading review exception—found that the claim was not inherently transitory *nor* had plaintiffs shown a "realistic threat that no trial court ever will have enough time to decide the underlying issue." *Id.*; *see also Harris v. University of Massachusetts Lowell*, 43 F.4th 187, 194 (1st Cir. 2022) (applying *Cruz* and finding "neither situation" present). Here, a *different* exception applies–the distinct inherently transitory exception. *Olson v. Brown*, 594 F.3d 577, 583 (7th Cir. 2010) (capable of repetition yet evading review is distinct from inherently transitory).

Under the inherently transitory exception, a plaintiff must show it is likely there will be a constant class of persons suffering the deprivation complained of in the complaint. *Id*. While under the capable of repetition yet evading review doctrine, the plaintiff must show that the claim is capable of repetition as to *that particular named plaintiff*. *Id*. As such, in this matter, the inherently transitory doctrine applies.

Moreover, the *Cruz* facts and holding are distinguishable. In *Cruz,* spouses of immigrants—not in government custody—brought a putative class action challenging the federal government's failure to process their immediate relatives' visa petitions and adjust status applications in a timely fashion.[12] *Cruz*, 252 F.3d at 534-36. Prior to even filing for class certification, the named plaintiffs received "complete relief" to their claims and thus the Court found the case moot.[13] *Id.* at 533.

Accordingly, *Cruz*'s holding does not squarely address the question of applicability of the inherently transitory exception to the unique class of foster children in this case. But the Fourth Circuit did just that in *Jonathan R. by Dixon v. Justice*, 41 F.4th 316 (4th Cir. 2022). The *Jonathan R.* court held that plaintiff foster children whose claims were moot fit within the inherently transitory exception as described by the Supreme Court.[14] *See id.* at 326 (citing

---

[12] Although the *Cruz* Court referenced the phrase "inherently transitory" in its opinion, that was in the context of applying the capable of repetition yet evading review exception. *See Cruz*, 252 F.3d at 535.

[13] The *Cruz* Court notes that under *Sonsa v. Iowa*, if a named plaintiff in a class action has a live claim at the time the class is certified the case need not be dismissed if his claim subsequently becomes moot. *See Cruz*, 252 F.3d at 533 (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.,*213 F.3d 124, 135 (3d Cir.2000). The Third Circuit has expanded *Sonsa*, holding that a class representative need only have a live claim at the time he moves for class certification. *See id*. at 534 n.3.While the First Circuit has not yet addressed *this issue*, the Third Circuit's reading of *Sonsa* would be dispositive in this case and it is undisputed that at least Named Plaintiff G.K. had live claims on all counts when Plaintiffs filed for class certification.

[14] *Gerstein* extended the relation back doctrine from *Sonsa* to Rule 23 cases where it is "certain that other persons similarly situated," 420 U.S. at 110 n.11, will continue to be subject to the

*Gerstein v. Pugh*, 420 U.S. at 110 n.11). Under reasoning directly applicable here, the Fourth Circuit explained that foster care placements are "exceedingly unpredictable" and "[e]ven if *some* children will spend a long-enough period in the system, requiring Plaintiffs to predict *which* child will asks too much." *Id*. The court also noted that the inherently transitory exception is "particularly fitting" when the *defendants themselves* can create a possibility that a named plaintiff could be dismissed prior to class certification, as is the case with foster children whose placements are at the mercy of the state. *Id.*

The inherently transitory principles identified in *Jonathan R.* and *Gerstein* apply equally persuasively here.[15] Requiring Plaintiffs to predict which of the proposed class members will spend long enough in legal custody to reach class certification is untenable for securing and maintaining Named Plaintiffs. D.M., for instance, was initially removed from their home, reunified with their mother, removed again, and then placed in over ten (10) congregate care placements. Second Amended Complaint at ¶¶127-130. ████████████████████████ ████████████████████ Contrast Defendants' treatment of Named Plaintiff D.M. to that of Named Plaintiff T.L., ██████████████████████████████ ██████████████████. Likewise, Named Plaintiff B.D. could exit foster care for any number of reasons, all controlled by the Defendants, such as reunification or adoption.

_____

challenged conduct and the claims raised are "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991).

[15] Compare the uncertainty of foster care with that of a class of college students. In *Harris*, 43 F.4th at 94, the Court found that the set nature of a college student (four years) and the brief nature of vaccination policies left it unplausible that no court could have enough time to certify the class. No such certainty exists in foster care when children will leave the system for a plethora of reasons at any time, only one of which is the passage of time when they turn 18. Such fluidity in the situation of the Named Plaintiffs leaves a real threat that a court could never certify a class of Older Foster Youth.

Moreover, Dr. Victor's analyses further show that Older Foster Youth routinely exit foster care before their claims might be adjudicated. *See* First Supp. Decl. of Dr. Bryan Victor in Support of Class Cert., at 40 tbl.30, ECF No. 281-3 (April 12, 2024) ("Victor 1st Supp. Decl.") (64 of the 199 Older Foster Youth in Defendants' custody in April 2022—one third—had exited by April 2023).

To the extent Defendants suggest the existence of a single case plan in B.D.'s file over their seventeen months in Defendants' custody, or scattered case plans in D.M.'s over ten years in Defendants' custody, demonstrates that it is "[un]certain" whether "persons similarly situated will continue to be subject to the same conduct," *see* Defs.' Second Mot. to Dismiss at 14, they are wrong.  In addition to unacceptable rates of *first* case plan development, Plaintiffs have identified specific drivers of other legal defects in Defendants' federally mandated "case review system," including periodic reviews and updates each child's case plan. *See* Pls.' Supp. Class Cert. Reply at 13.

While not relevant to the class certification inquiry before the Court, *see* Pls. Supp. Class Cert. Reply, AACWA explicitly sets the requirements for Defendants' case-plan review system as it pertains to each foster child. Case plans must first be developed no later than 60 days from the child's removal, "jointly with the parent(s)" and "in consultation with the [youth if 14 years or older]." *See* 45 C.F.R. § 1356.21(g)(2); 42 U.S.C. § 675(1)(B). AACWA further mandates that case plans reflect the child's *current* circumstances—including up-to-date information related to the child's placement, services, and health and education.[16] For this reason, case plans

---

[16] *See* 42 U.S.C. §§ 675(1)(A), (B), (C), (G); *see also id.* § 675(5)(A)(i) ("[I]f the child has been placed in a foster family home or child-care institution a substantial distance from [their parents'], or in a [different] State . . . , [the case plan must] set[] forth the reasons why *such placement* is in the best interests of the child" (emphasis added)).

must be updated, at minimum, every six months as part of a broader case review system, and more frequently as the child's changed circumstances may require.[17] As discussed at length by Plaintiffs' expert Daryl Chansuthus, neither D.M.'s nor B.D.'s case plans were compliant under these provisions of AACWA. *See* Supp. Decl. of Daryl Chansuthus in Supp. of Class Cert., ECF No. 279, (May 1, 2024) ("Chansuthus 1st Supp. Decl."); *see* Second Supp. Decl. of Daryl Chansuthus in Supp. of Class Cert., ECF No. 306-6, (June 18, 2024) ("Chansuthus 2nd Supp. Decl."). And Plaintiffs have identified specific drivers of both Defendants' deficient rates and timing of *initial* case plan development, and of their deficient rates and timing of federally-mandated periodic updates to each child's case plan. *See* Pls.' Supp. Class Cert. Reply at 13-14. These issues therefore are likely to recur and be redressable through changes to policies and practices ensuring timely initial plans and periodic updates.

These facts and circumstances, as well as the procedural history of this action,[18] underscore the truly inherently transitory nature of the foster care system in New Hampshire. They starkly differ from the plaintiffs in *Cruz* and, as such, demand a different result. *See Cruz*

---

[17] 42 U.S.C. § 675(5)(B) (mandating a case review system to ensure that "the status of each **child** is reviewed periodically but no less frequently than once every six months . . . in order to determine . . . the extent of compliance with the **case plan**"); *see also id.* § 675(5)(D) (case review system must ensure that "a **child**'s health and education record . . . is reviewed and updated"); *see also* Admin. for Child. & Fams., U.S. Dep't Health & Hum. Svcs., *8.3C.1 Title IV-E, Foster Care Maintenance Payments Program, State Plan/Procedural Requirements, Case Plans*, Child Welfare Policy Manual (last visited July 29, 2024), https://www.acf.hhs.gov/cwpm/public_html/programs/cb/laws_policies/laws/cwpm/policy_dsp_pf.jsp?citID=60 ("[W]hen a new placement is made, either a new or updated case plan must be developed. If a child remains in the same placement for several years, the case plan should be updated periodically. Ordinarily, this should occur after each six-month periodic review. The education and health section of the case plan should also be updated as appropriate to reflect the changing services to and needs of the child.").

[18] Defendants' own extensive discovery delays—something in their control—have pushed class certification out even further. These delays have increased the risk of Named Plaintiffs exiting DCYF custody prior to class certification.

252 F.3d at 534-36. For all of the above reasons, this Court should apply the inherently transitory exception to mootness to this case.

## **CONCLUSION**

For all of the reasons explained above, the Defendants' Motion to Dismiss should be denied.

Dated: August 15, 2024

Respectfully submitted,

PLAINTIFFS, G.K., et al.,

By their attorneys,

/s/ Michelle Wangerin, Esq.
**NEW HAMPSHIRE LEGAL ASSISTANCE**
Michelle Wangerin
N.H. Bar No. 17769
Kay E. Drought
N.H. Bar No. 12851
154 High Street
Portsmouth, NH 03801
P: (603) 431-7411
F: (603) 431-8025
mwangerin@nhla.org
kdrought@nhla.org

**AMERICAN CIVIL LIBERTIES UNION OF**
**NEW HAMPSHIRE**
Gilles R. Bissonnette
N.H. Bar No. 265393
Henry R. Klementowicz
N.H. Bar No. 21177
18 Low Avenue
Concord, NH 03301
P: (603) 224-5591
gilles@aclu-nh.org
henry@aclu-nh.org

**DISABILITY RIGHTS CENTER-NH, INC.**
Jennifer A. Eber
N.H. Bar No. 8775
Kayla J. Turner
N.H. Bar No. 270167
64 North Main Street, Suite 2
Concord, NH 03301-4913
P: (603) 228-0432
F: (603) 225-2077
jennifere@drcnh.org
kaylat@drcnh.org

**CHILDREN'S RIGHTS, INC.**
Ira Lustbader
NY Bar No. 2516946
Madeleine MacNeil Kinney
NY Bar No. 5312426, MA Bar No. 690939
Kathleen Simon
NY Bar No. 5682810
Carolyn Hite
NY Bar No. 5677422
Aarti Iyer
NY Bar No. 5367578
Rebecca Ritchin
NY Bar No. 6015069
88 Pine Street, 8th Floor
New York, NY 10005
P: (212) 683-2210
F: (212) 683-4015
ilustbader@childrensrights.org
mkinney@childrensrights.org
ksimon@childrensrights.org
chite@childrenrights.org
aiyer@childrensrights.org
rritchin@childrensrights.org

**WEIL, GOTSHAL & MANGES LLP**
Konrad L. Cailteux
NY Bar No. 2056505
Katheryn Maldonado
NY Bar No. 5926027
Kathleen Stanaro
NY Bar No. 5900410
Sarah Ryu
NY Bar No. 5405642
767 Fifth Avenue

New York, NY 10153
P: (212) 310-8000
F: (212) 310-8007
Konrad.Cailteux@weil.com
Katheryn.Maldonado@weil.com
Kathleen.Stanaro@weil.com
Sarah.Ryu@weil.com