## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**G.K., by their next friend,**
**Katherine Cooper et al.**

      v.

Case No. 21-cv-4-PB
Opinion No. 2024 DNH 078

**Christopher Sununu, Governor**
**of New Hampshire et al.**

## MEMORANDUM AND ORDER

Six adolescents within the custody of the New Hampshire Division of Children, Youth, and Families (DCYF) filed a putative class action complaint seeking injunctive and declaratory relief for alleged violations of the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Adoption Assistance and Child Welfare Act (CWA). Since filing the complaint, five of the six named plaintiffs have exited DCYF custody.

The defendants move to dismiss the five plaintiffs no longer in DCYF custody from the suit, arguing that their claims are now moot. The defendants further move to dismiss the remaining plaintiff's CWA claim for lack of statutory standing. For the following reasons, the defendants' motion is granted in part and denied in part.

# I.     BACKGROUND[1]

In January 2021, four adolescent foster children, G.K., C.I., T.L., and R.K., filed a complaint on behalf of themselves and a putative class of similarly situated individuals seeking declaratory and injunctive relief for alleged deficiencies in New Hampshire's operation of its foster care program.[2] Count I of the plaintiffs' initial complaint asserted that the defendants are violating the due process clause of the Fourteenth Amendment by failing to provide adolescent foster children (that is, foster children between 14 and 17 years of age) with the right to counsel at certain proceedings. Count II asserted that the defendants are violating the CWA by failing to ensure that adolescent foster children receive legally adequate case plans. Finally, Counts III through VI alleged that the defendants are violating the ADA and the Rehabilitation Act by systematically placing and retaining adolescent foster children with mental and behavioral disabilities in congregate care facilities, even where those children could be appropriately placed in community-based settings. Doc. 1 at 51-57.

---

[1]     I focus here on the facts most relevant to the defendants' motion to dismiss but incorporate the more detailed account of this litigation's history outlined in my prior orders. See Doc. 303; Doc. 315.

[2]     The named plaintiffs are each pursuing this action pseudonymously. In an effort to further protect the plaintiffs' identities, the parties refer to them using gender-neutral pronouns. I follow suit here.

The defendants moved to dismiss each of the plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). I granted the defendants' motion with regards to the plaintiffs' due process claim but declined to dismiss the remaining claims. As relevant here, I concluded that, although the CWA does not explicitly provide for a private right of action, it conferred an individual right to a case plan that could be enforced through a cause of action under 42 U.S.C. § 1983. Doc. 49 at 26, 34.

A few months later, in November 2021, T.L. was returned to their parent's custody. Doc. 100-2. Then, in May 2022, C.I. "aged out" of DCYF custody upon turning 18 years old. Doc. 100. The defendants moved to dismiss T.L. and C.I. from the suit, arguing that their claims were moot. Doc. 99. While that motion was pending, R.K. was returned to their parent's custody, leaving G.K. as the only named plaintiff still within DCYF custody. Doc. 178-16. I ultimately denied the defendants' motion to dismiss without prejudice based on my conclusion that it was unnecessary to decide given that at least one named plaintiff remained in DCYF custody and could advance live claims on behalf of the class. Doc. 137 at 12-13.

In March 2023, the plaintiffs moved to certify a class of certain adolescent foster children with mental health disabilities. Doc. 152. Shortly after that motion became ripe, the parties agreed to stay the litigation in order to pursue mediation. Doc. 259. In January 2024, while the stay was still

in place, G.K. aged out of DCYF custody. Doc. 265 at 2. The plaintiffs filed a

motion to amend their complaint to add a new named plaintiff still within

DCYF custody, D.M., which I granted. Id.; see also Doc. 315 at 10.

The parties were ultimately unable to reach a settlement agreement,

and mediation came to a close in April 2024. A few weeks later, the plaintiffs

moved to supplement the expert reports they had submitted in support of

their motion for class certification. Doc. 277. I granted the plaintiffs' motion

but provided the defendants with the opportunity to respond to the plaintiffs'

supplemental reports through additional discovery and briefing. Doc. 303 at

22-23 & n.5. The defendants were given until August 2024 to submit their

supplemental briefing, which made it impossible for me to rule on the

plaintiffs' motion for class certification before D.M. aged out of DCYF custody

in July 2024. Doc. 287 at 23, 19-20. Consequently, I granted the plaintiffs'

request to amend their complaint to add a sixth named plaintiff, B.D., who

has remained in DCYF custody. Doc. 315 at 13.

The parties have submitted their supplemental briefing, and the

plaintiffs' motion for class certification is now ripe for resolution. The

defendants have renewed their motion to dismiss those named plaintiffs who

have exited DCYF custody and, further, move to dismiss B.D.'s CWA claim.

## II.  ANALYSIS

The defendants assert that G.K., C.I., T.L., R.K., and D.M. must be

4

dismissed from the action because their claims for prospective relief are now moot.[3] The defendants further assert that B.D. lacks statutory standing to pursue their CWA claim because they do not receive federally-reimbursed foster care maintenance payments.

The plaintiffs contend that none of their claims are moot under the so-called inherently transitory exception to mootness. The plaintiffs further argue that B.D. has standing to advance their CWA claim, even if they do not receive foster care maintenance payments, because the CWA's case planning requirements apply to all foster children.

I begin by considering the defendants' arguments on statutory standing before turning to their arguments on mootness.

## A.     Statutory Standing

"When a plaintiff alleges injury to rights conferred by a statute, two separate standing-related inquiries pertain: whether the plaintiff has Article

---

[3]     The defendants argue that, because these named plaintiffs' claims are now moot, they lack Article III standing. In doing so, the defendants erroneously conflate standing with mootness. See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 190 (2000). "It is the doctrine of mootness, not standing, that addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." West Virginia v. Env't Prot. Agency, 597 U.S. 697, 719 (2022) (cleaned up). The defendants' arguments do not challenge the plaintiffs' standing at the time the suit was filed, but rather their continued interest in the litigation. I therefore construe the defendants' motion as seeking the dismissal of certain claims on the basis of mootness rather than lack of Article III standing.

III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing)." Katz v. Pershing, LLC, 672 F.3d 64, 75 (1st Cir. 2012). Although both are termed "standing," the two inquiries turn on distinct questions with vastly different implications. "Constitutional standing goes to the power of the court: the question is whether the parties have presented the kind of case or controversy that the Constitution allows federal courts to hear." Vander Luitgaren v. Sun Life Assurance Co. of Can., 765 F.3d 59, 62 (1st Cir. 2014). Statutory standing, in contrast, is matter of "statutory interpretation: the question it asks is whether Congress has accorded this injured plaintiff the right to sue the defendant under the particular statute to redress his injury." Id. (cleaned up).

Because statutory standing goes to the merits of the claim rather than the court's jurisdiction, motions to dismiss for lack of statutory standing are evaluated under Rule 12(b)(6). Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 n.2 (5th Cir. 2011); Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011). Under this standard, the court must "accept as true all well-pleaded factual averments in the plaintiff's complaint and indulge all reasonable inferences therefrom in his favor." Katz, 672 F.3d at 70 (cleaned up). A motion to dismiss for lack of statutory standing may be granted only if the facts in the complaint fail to sufficiently establish that the plaintiff "has a cause of action under a particular statute." See United States v. Catala, 870

F.3d 6, 10 (1st Cir. 2017).

Here, B.D.'s CWA claims are brought pursuant to § 1983. A plaintiff has a "cause of action [under § 1983] when an individual, acting under color of state law, deprives [the plaintiff] of federally assured rights." Pendleton v. City of Haverhill, 156 F.3d 57, 62 (1st Cir. 1998) (quoting Camilo-Robles v. Hoyos, 151 F.3d 1, 5 (1st Cir. 1998)). The question of statutory standing therefore turns on whether B.D. has a "federally assured right[]" to a case plan under the CWA. See id.; see also Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth., 389 F.3d 491, 498-499 (5th Cir. 2004); Wellington v. District of Columbia, 851 F. Supp. 1, 3 (D.D.C. 1994).

The CWA is a 1980s-era spending bill, codified in the Social Security Act, that provides "federal funding for expenses associated with operating a foster care system." Connor B. ex rel. Vigurs v. Patrick, 774 F.3d 45, 61 (1st Cir. 2014). The CWA made two primary changes to the Social Security Act. First, it imposed additional requirements on states receiving federal funds under Title IV-B, which provides financial support for all children in state supervised foster care. Vt. Dep't of Soc. & Rehab. Servs. v. U.S. Dep't of Health & Hum. Servs., 798 F.2d 57, 59 (2d Cir. 1986). Second, it created Title IV-E, which reimburses states for foster care maintenance payments paid on behalf of certain eligible foster children. Id.; see also 42 U.S.C. § 672(a) (establishing eligibility criteria for foster care maintenance payments).

To receive funding under either Title IV-B or Title IV-E, states must comply with certain case planning requirements. 42 U.S.C. § 671 requires states seeking reimbursement for foster care maintenance payments under Title IV-E to "provide[] for the development of a case plan . . . for each child receiving foster care maintenance payments under the State [Title IV-E] plan and provide[] for a case review system . . . with respect to each such child[.]" Similarly, 42 U.S.C. § 622 requires states receiving Title IV-B funds to provide "a case review system . . . for each child receiving foster care under the supervision of the State[.]" The case review system required by both provisions must, among other things, ensure that "each child has a case plan[.]" Id. at § 675(5). That case plan, moreover, must contain certain elements, such as a description of the child's placement, information regarding the child's educational and medical history, and a plan for ensuring that the child receives required care and services. Id. at § 675(1) (defining a "case plan" as including certain substantive elements); see also id. at § 675a (establishing additional case planning requirements).

B.D.'s CWA claim is premised on the assertion that the defendants fail to provide adolescent foster children with timely, up-to-date case plans that meet these substantive requirements. The defendants assert that B.D. lacks statutory standing to bring this claim because B.D. does not receive foster

care maintenance payments under Title IV-E.[4] In the defendants' view,

because § 671 expressly limits its scope to children "receiving foster care

maintenance payments under the State [Title IV-E] plan," only foster

children who receive Title IV-E funding have standing to pursue a case

planning claim under the CWA.

The defendants' argument, however, entirely ignores the fact that the

plaintiffs CWA claim is also based on the case planning requirements of

§ 622.[5] While the defendants may be correct that § 671 only applies to a

particular subset of foster children, § 622 expressly applies to <u>all</u> foster

children. And, although § 622 does not explicitly reference a "case plan" in

the manner that § 671 does, it clearly imposes the same case planning

---

[4]     The defendants' assertion that B.D. does not receive such payments is
based on an affidavit signed by one of the defendants' attorneys. Doc. 324-1 at
3. Documents outside the complaint, such as the defendants' affidavit,
generally may not be considered when resolving a motion under Rule 12(b)(6)
unless the motion is converted into one for summary judgment. Alt. Energy,
Inc. v. St. Paul Fire Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).
Regardless, I need not convert the defendants' motion into one for summary
judgment because the affidavit, even if properly considered, would have no
bearing on my ultimate conclusion.

[5]     Contrary to the defendants' assertions, the plaintiffs have invoked the
case planning requirements of both § 622 and § 671 from the outset. See Doc.
1 at 34, 51; Doc. 35 at 10, 16; cf. Doc. 195 at 27 (responding to the plaintiffs'
assertion that the defendants systematically fail to provide case plans to
putative class members in violation of § 622). And, although the defendants
refer to the plaintiffs' case planning claim as a "Title IV-E claim," the
plaintiffs have consistently discussed their claim in reference to the CWA
more broadly.

requirements. As I have explained, § 622 requires each foster child to be provided with a "case review system," one aspect of which is the development of a case plan. The CWA does not draw any distinction between case plans required by § 622 and § 671. To the contrary, the CWA provides only one definition of a "case plan" that explicitly applies to both Title IV-B and Title IV-E. See 42 U.S.C. § 675(1) (defining a "case plan" for the purposes of "part [E] or part B of this subchapter").

Thus, all foster children—including B.D.—have an enforceable right to a case plan under § 622. To the extent that some children are also provided with case planning rights under § 671, those rights are merely duplicative to those already conferred by § 622. Accordingly, B.D. enjoys the same case planning rights as every other member of the putative class, regardless of whether § 671 applies to B.D.

The defendants do not dispute that § 622 provides all foster children with the same case planning rights as § 671; indeed, the defendants have expressly disavowed making any such argument. See Doc. 340 at 1 (stating that the plaintiffs' assertion that § 622 provides all foster children with case planning rights "addresses an argument that Defendants do not make"). Instead, the defendants' argument appears to be limited to the assertion that, even if B.D. has standing to enforce the case planning requirements of § 622, they lack standing to enforce the case planning requirements of § 671. Id. at

2.

The defendants' argument is flawed for several reasons. As an initial matter, it fails to justify the relief they seek. That B.D.'s case planning rights derive from one section of the CWA but not another provides no basis for dismissing B.D.'s claim in its entirety. More fundamentally, the defendants' argument ignores the fact that, although the substantive rights B.D. seeks to enforce stem from the CWA, their cause of action arises under § 1983. Accordingly, the question is not whether B.D. can state a claim under each and every provision of the CWA, but whether they can state a claim under § 1983. Because § 622 and § 671 confer the exact same case planning rights, the fact that only one of the provisions applies to B.D. has no bearing on their ability to enforce those rights through a cause of action under § 1983.

To the extent the defendants argue that B.D. cannot represent a putative class that includes some members who may wish to also invoke the case planning requirements of § 671, their argument is best addressed at class certification.[6] For now, it is sufficient to conclude that B.D. has an

---

[6]   The First Circuit has recognized that differences between a named plaintiff's claims and those of absent class members may bear on the named plaintiff's Article III standing. In re Asacol Antitrust Litig., 907 F.3d 42, 48 (2018). The defendants have not contested B.D.'s standing under Article III, and any such argument would be unavailing. See id. at 49 (holding that a named plaintiff had Article III standing to represent a class that included members pursuing claims under different statutes where the "laws [were]

enforceable right to a case plan, and therefore has statutory standing to pursue their CWA claim.

## B.   Mootness

"The Constitution confines the federal courts' jurisdiction to those claims which embody actual 'cases' or 'controversies.'" Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001) (quoting U.S. Const. art. III, § 2 cl. 1). "When a [claim] is moot—that is, when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome—a case or controversy ceases to exist" and the court lacks jurisdiction to resolve that claim.[7] Id.

In the class action context, claims must normally be dismissed as moot "if no named class representative with an unexpired claim remain[s] at the time of class certification." United States v. Sanchez-Gomez, 584 U.S. 381, 386 (2018). However, once a class is certified, it "acquire[s] a separate legal status that survive[s] the dissipation of the named plaintiff's claim." Cruz, 252 F.3d at 533. Thus, although mootness of a named plaintiff's individual

---

materially the same").

[7]     Because they bear on the court's subject matter jurisdiction, motions to dismiss for mootness are evaluated under Rule 12(b)(1). See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-363 (1st Cir. 2001). Where, as here, the relevant jurisdictional facts are not in dispute, the court must "credit the plaintiff's well-pleaded factual allegations . . . draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly." Id. at 363.

claim prior to class certification may render the class claims moot, mootness of a named plaintiff's individual claim after certification will not. U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980).

Even where a named plaintiff's claims become moot prior to class certification, however, the class claims may proceed if they fit within the "inherently transitory" exception to mootness. Id. at 399. Under this exception, class certification may be granted "where it is 'certain that other persons similarly situated' will continue to be subject to the challenged conduct and the claims raised are 'so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'" Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 76 (2013) (quoting County of Riverside v. McLaughlin, 500 U.S. 44, 52 (1991)).

The defendants contend that, because the named plaintiffs that are no longer in DCYF's custody are not subject to the defendants' allegedly unlawful practices, their claims for prospective relief are now moot. In the defendants' view, those named plaintiffs cannot advance any live claims on behalf of the class and therefore must be dismissed from the action. The plaintiffs counter that, even if they lack a present interest in the litigation, they may continue to advance the class claims pursuant to the inherently transitory exception.

13

The plaintiffs have a strong argument that their claims are inherently transitory. As I explain in my order on the plaintiffs' motion for class certification, the defendants are engaging in various allegedly unlawful practices that apply to the class as a whole. Accordingly, there is little doubt that at least "some class members will retain a live claim at every stage of the litigation." J.D. v. Azar, 925 F.3d 1291, 1311 (2019).  Moreover, "[i]t is by no means certain" that any given foster child will remain in DCYF custody "long enough for a district judge to certify the class." Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975) (finding that the inherently transitory exception applied to a putative class of pretrial detainees because the "length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time"). Although some children remain in DCYF custody until they turn 18, any given child could exit DCYF custody at an earlier point if they are adopted or reunified with their family of origin. Because it is impossible to determine whether foster children will be in DCYF custody for a matter of days, months, or years, their claims could likely be considered "inherently temporary and of uncertain length[.]" Sanchez-Gomez, 584 U.S. at 386; see also Jonathan R. v. Justice, 41 F.4th 316, 326 (4th Cir. 2022) (finding that foster children's claims for prospective relief fit within the inherently transitory exception); Wyatt B. v. Brown, No. 6:19-cv-00556-AA, 2022 WL 3445767, at *22 (D. Or. Aug. 17, 2022) (same).

Regardless, I need not determine whether the plaintiffs' claims fit within the inherently transitory exception. The exception "operates to keep a class action viable prior to certification" so that class claims do not become unreviewable because of "friction in the judicial machinery[.]" Cicchetti v. Lucey, 514 F.2d 362, 367-368 (1st Cir. 1975). But here, because B.D. can advance each of the plaintiffs' claims on behalf of the class, the class claims remain viable regardless of whether the inherently transitory exception applies. See JD, 925 F.3d at 1310 ("The 'inherently transitory' exception serves only to salvage claims that will, or at least might, not survive until class certification.") (emphasis added); see also Sam M. ex rel. Elliott v. Chafee, 800 F. Supp. 2d 363, 373 (D.R.I. 2011) (declining to consider whether the inherently transitory exception applies where at least two other named plaintiffs maintained a live claim). Because there is no need to invoke the inherently transitory exception, I decline to consider whether it applies and dismiss G.K., C.I., T.L., R.K., and D.M. from the case.[8]

### III.   CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss (Doc. 318) is granted in part and denied in part, and the defendants' motion to disqualify the plaintiffs' next friends (Doc. 177) is denied. B.D. may remain as

---

[8]      In light of this conclusion, the defendants' motion to disqualify the next friends of C.I., T.L., and R.K. (Doc. 177) is denied as moot.

a plaintiff and advance each of the putative class claims, but G.K., C.I., T.L., R.K., and D.M. are dismissed from the action. The case caption shall be amended accordingly.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

September 18, 2024

cc:    Counsel of record